USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: Feb. 16, 2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

PHOENIX LIGHT SF LIMITED, et al.,

                            **Plaintiffs,**

      -against-

HSBC BANK USA, NATIONAL ASSOCIATION,

                            **Defendant.**
-----------------------------------------------------------------X

**14-CV-10101 (LGS) (SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

HSBC moves to amend its Answer to Plaintiffs' Amended Complaint with four additional defenses. ECF No. 361. That motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs sued HSBC in its role as trustee for 29 trusts composed of residential mortgage-backed securities ("RMBS"). ECF No. 53. The action was coordinated with five similar suits against HSBC, in which a limited number of trusts were selected to proceed through discovery, motions, and trial (if necessary), in what was deemed a bellwether process, with actions on the remaining trusts deferred. See ECF No. 38. On January 2, 2019, this action was referred to my docket for general pre-trial supervision. See ECF No. 347.

Fact discovery in the four bellwether trusts closed on May 1, 2017, with a limited exception for certain depositions completed June 16, 2017. See ECF No. 252. Expert discovery will close on April 7, 2021. See ECF No. 343. The parties' motions for summary judgment and Daubert will be completed by September 7, 2021. See id. Trial on the four bellwether trusts is likely more than a year away.

On July 31, 2020, HSBC filed its first motion to amend its Answer to the Amended Complaint. ECF No. 361. It seeks to add four defenses against the Plaintiffs' allegations. First, it asserts the defense of champerty under N.Y. Judiciary Law § 489(1). See ECF No. 362, Appx. A. It also asserts the defenses of impossibility, impracticability, and frustration of purpose of the governing trust agreements. Id. The Plaintiffs oppose the motion. The Court has not previously set a deadline to amend pleadings.

## DISCUSSION

### I.   Standard of Review

Generally, a party may amend its answer once as of right within 21-days of serving the original pleading. Fed. R. Civ. P. 15(a)(1). Once that period expires, however, a party may amend only with consent of the opposing parties or with leave of the court. Fed. R. Civ. P. 15(a)(2). Although the Court "should freely give leave" to amend a party's pleading "when justice so requires," Fed. R. Civ. P. 15(a)(2), it may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)). The movant bears the burden of explaining its delay, while the opposing party must show futility, prejudice, or bad faith. See U.S. ex rel Kester v. Novartis Pharma. Corp., No. 11-cv-08196 (CM), 2015 WL 1650767, at *5 (S.D.N.Y. April 10, 2015) (moving party's burden); Contrera v. Langer, 314 F. Supp. 3d 562, 567 (S.D.N.Y. 2018) (opposition's burden).

The Court of Appeals has expressed its "strong preference for resolving disputes on the merits," weighing in favor of granting amendments. Williams v. Citigroup, Inc., 659 F.3d 208, 212–13 (2d Cir. 2011). "[Rule 15(a)(2)] reflects two of the most important principles behind the

Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated . . . and 'mere technicalities' should not prevent cases from being decided on the merits." Monahan v. N.Y.C. Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000) (citation omitted). Accordingly, "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." Id. at 283.

I. **Application**

As a preliminary matter, the Plaintiffs do not claim that HSBC acted in bad faith or with a dilatory motive. Therefore, the Court focuses its analysis on whether the Plaintiffs have shown that HSBC's amendments will cause undue prejudice, undue delay, or are futile.

A. **Undue Prejudice and Undue Delay**

The Court of Appeals has held that undue prejudice is "perhaps [the] most important" factor under the Rule 15(a)(2) analysis. See State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981). "The concepts of delay and undue prejudice are interrelated—the longer the period of unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." Davidowitz v. Patridge, No. 08-cv-06962 (NRB), 2010 WL 1779279, at *2 (S.D.N.Y. Apr. 23, 2010) (citing Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 46–47 (2d Cir. 1983)). Courts determine whether a new defense would be unduly prejudicial by evaluating whether it would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii)

prevent the plaintiff from bringing a timely action in another jurisdiction." Monahan, 214 F.3d at 284 (quotation omitted).[1]

Plaintiffs argue that HSBC's amendment should be denied because HSBC does not explain why it waited five years to move to amend, especially given that the "circumstances surrounding the defenses HSBC seeks to add" have been "well known for years." ECF No. 365 at 3 (quotations omitted). They cite Frenkel v. New York City Off-Track Betting Corp., for the proposition that HSBC's failure to amend its answer based on previously known facts is itself dispositive for denying the motion. See 611 F. Supp. 2d 391, 394–95 (S.D.N.Y. 2009), opinion adopted, 701 F. Supp. 544 (S.D.N.Y. 2010). Their reliance on Frenkel is misplaced, however, as that court made clear that "[l]eave to amend . . . will generally be denied when the motion to amend is filed *solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgment,*" which is not the case here. Id. at 394–95 (emphasis added, quotation omitted). Indeed, the relevant question to determine undue delay under Rule 15(a)(2) is not how much time has elapsed since the complaint was filed, but how much remains before the Court evaluates its merits. See Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998) (finding that an amendment's prejudice is determined by "the degree to which it would delay the *final disposition of the action*" (citation omitted)).

Although HSBC did not move to amend for several years, it explained the delay, including: to conform its defenses to the evidence uncovered throughout discovery; and to present a defense raised in a parallel RMBS case. See Phoenix Light SF Ltd. v. U.S. Bank Nat'l

---

[1] Plaintiffs do not argue the third factor, which generally relates to a statute to limitations, and there is no reason to believe it is implicated here.

Ass'n, No. 14-cv-10116 (VSB), 2020 WL 1285783, at *3 (S.D.N.Y. Mar. 18, 2020). It also explained that it waited to move to amend until after a settlement conference was held on June 25, 2020. See ECF No. 361 (settlement conference order). HSBC promptly filed its motion approximately one month after that settlement conference proved unsuccessful.

Furthermore, although Plaintiffs cite several other cases in support of their opposition, HSBC distinguished each as being in a different posture than this case, including cases where the amendment sought was either after the permitted period in the civil case scheduling order, within days of summary judgment or trial, or after summary judgment motions were filed. See, e.g., Commerzbank AG v. The Bank of New York Mellon, et al., No. 15-cv-10029 (GBD) (BCM), ECF No. 152 at *6 (S.D.N.Y. Nov. 6, 2018) (denying the motion "because a deadline to amend the pleadings was set, was never modified, and has long passed"); Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983) (upholding the district court's denial of a motion to amend made "after two pre-trial conferences, and only six days before . . . trial," and where no persuasive reason was given for the delay); Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (upholding the district court's denial of the plaintiff's motion to amend made one month *after* the plaintiff had already filed its opposition to summary judgment). None of those circumstances is present here, and the Court finds HSBC's distinctions persuasive. Thus, HSBC has met its burden in explaining the delay, and Plaintiffs failed to show that the amendment will significantly delay final disposition of the case.

The only remaining question regarding whether the amendments would unduly prejudice the Plaintiffs, then, is if adding the proposed defenses would require the Plaintiffs to expend significant additional resources to conduct discovery and prepare for trial. As noted above, fact discovery has closed, with expert discovery set to close April 7, 2021. As such, any additional

5

discovery implicated by HSBC's amendments might require the reopening of a deadline that expired nearly four years ago and extending the expert discovery period. The discovery implications of HSBC's newly proposed defenses are evaluated in turn, with champerty first, and impossibility, impracticability, and frustration of purpose second.

### 1. The Discovery Implications of HSBC's Champerty Defense

New York's champerty law is based upon a common law doctrine "designed to prevent or curtail the commercialization or trading in litigation." Phoenix Light SF Ltd. v. U.S. Bank N.A., No. 14-cv-10116 (VSB), 2020 WL 1285783, at *3 n.5 (S.D.N.Y. Mar. 18, 2020) (citing N.Y. Judiciary Law § 489(1)) (quotation omitted). HSBC argues that Plaintiffs lack standing to sue, including because of the champertous nature of assignments they received from the true claimholder. It further argues that Plaintiffs were put on notice of its intent to contest Plaintiffs' standing to sue in its Answer, and that the form, scope, and purpose of these assignments have already been a subject of discovery.[2] Furthermore, it notes that Plaintiffs have recently litigated the same defense involving the same assignments and exact same facts.[3] See Phoenix Light SF Ltd., 2020 WL 1285783, at *1 (finding that RMBS assignments implicated both Article III and prudential standing questions). Finally, it claims that no further discovery is needed, as any evidence relevant to the assignments is in the Plaintiffs' possession, and that the defense does not alter any factual allegations.

---

[2] HSBC has already pleaded the defenses of standing and contractual standing in its Answer. See ECF No. 62 at 41, 47. It also argues that HSBC explicitly denied the effectiveness of Plaintiffs' assignments in the portion of Plaintiffs' Complaint titled "Plaintiffs' Acquisition of Certificates and Standing to Sue." See ECF No. 53 ¶¶ 26–44; ECF No. 62 at *6–9.

[3] HSBC has already asserted a collateral estoppel defense in its Answer, which it argues put the Plaintiffs on notice of its intent to use as a defense any case law deciding identical issues. See ECF No. 62 at *41.

6

Although Plaintiffs argue that they should not be deprived of an opportunity to pursue fact discovery concerning the champerty defense, they fail to articulate what discovery would be implicated by the defense. A generalized complaint that there was no discovery on a particular defense is not the same as showing that opposing the defense will require the Plaintiffs to expend significant resources to reopen discovery. See Lamont v. Frank Soup Bowl, No. 99-cv-12482 (JSM) (HBP), 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000) (allowing amended defenses where the plaintiff "fail[ed] to offer any explanation of . . . what other discovery he would have taken had this amendment been included in defendant's original answer"). Accordingly, the Court finds that Plaintiffs do not show that adding the champerty defense will be unduly prejudicial.

### 2. The Discovery Implications of HSBC's Impossibility, Impracticability, and Frustration of Purpose Defenses

HSBC's remaining proposed defenses relate to its ability to perform its duties as an RMBS trustee. It contests the Plaintiffs' allegations that it was obliged to unilaterally undertake factual investigations and initiate litigation against trust sponsors to repurchase a massive number of purportedly breaching loans. It notes, however, that *if such a duty did exist*, the 2008 Financial Crisis made it impossible or impracticable to meet its obligations and frustrated the purpose of such obligations. Specifically, it puts at issue whether HSBC could investigate and initiate massive litigation efforts, and whether the sponsors of the loans could possibly repurchase in the volumes asserted by the Plaintiffs.

Plaintiffs make a stronger showing that these defenses were not subject to particularized discovery, and that allowing the amendments without further discovery would be unduly

7

prejudicial.[4] First, they note that HSBC successfully limited the scope of discovery throughout the case by arguing that it could withhold "corporate trust administration documents involving non-Bellwether trusts" including documents related to "'common' servicers, originators and sponsors [because] doing so would undo the Bellwether process." ECF No. 111 at 1. They contend that—had HSBC pleaded these affirmative defenses initially—Plaintiffs would have an undisputed right to discovery relating to non-bellwether trusts, as it would bear on whether HSBC *could* and *did* take actions in other trusts that it now contends was impossible for the trusts at issue. Plaintiffs add that they should be permitted to assess whether there were any factual differences that made HSBC's performance possible in one context, but impossible with respect to the at-issue trusts.

Second, Plaintiffs argue that these defenses are available to the asserting party only if its conduct did not contribute to the impossibility, impracticability, or frustration. See, e.g., Lowenschuss v. Kane, 520 F.2d 255, 265 (2d Cir. 1975); accord In re Stock Exchange Options Trading Antitrust Litig., No. 99-cv-00962 (RCC), 2005 WL 1635158, at *11 (S.D.N.Y. July 8, 2005) (noting that a party asserting frustration of purpose must be "without . . . fault"). As the Second Circuit has recognized, the RMBS industry (of which HSBC was a part) "was a textbook example of a small set of market participants racing to the bottom to set the lowest possible

---

[4] This is bolstered by an entire section of Plaintiffs' brief that requests that—if HSBC's motion is granted—the Court should reopen discovery as to the impossibility, impracticability, and frustration of purpose defenses, but not to champerty. They lists six areas in which it would seek discovery: (i) repurchase demands HSBC made and the result of such demands; (ii) HSBC's involvement in repurchase litigation; (iii) steps taken to address breaches by servicers in RMBS trusts and similar securitization structures; (iv) HSBC's failure to take action despite knowing of breaches by parties who originated or serviced loans in this actions and the reasons for such inaction; (v) funds or other relief HSBC has received to compensate an RMBS trust or its certificate holders for losses or to prevent future losses; and (vi) HSBC's general ability to seek recoveries or servicing improvements during the relevant period. ECF No. 365 at *12.

standards for themselves." See Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc., 873 F.3d 85, 134 (2d Cir. 2017). Plaintiffs argue that HSBC successfully curtailed discovery into its own wrongdoing and contribution to the conditions of the 2008 Financial Crisis by withholding numerous relevant transcripts of depositions taken of HSBC employees that were involved in loan origination misconduct and drastically limited the amount of discovery that Plaintiffs could obtain from HSBC's corporate trust department. See ECF No. 153 at 6–7.

Plaintiffs' arguments are compelling. Although HSBC claims that Plaintiffs had ample opportunity to conduct discovery on these issues and to request information regarding trusts outside of the bellwether process, this does not comport with its previous arguments that such discovery be limited. And just because Plaintiffs were able to ask questions during depositions related to non-bellwether trusts does not mean that any question or admission was directed toward rebutting these defenses. Furthermore, whereas Plaintiffs control the documents necessary to counter HSBC's champerty defense, HSBC is largely in control of the documents and information the Plaintiffs would need to rebut its claims of impossibility, impracticability, and frustration of purpose. Finally, the Court would be loath to reopen discovery in this case nearly four years after its close, which was a hard-fought process in the first instance. Doing so *would* delay the final disposition of this case because the impending expert discovery, summary judgment, and Daubert deadlines would likely be pushed back to accommodate any new facts uncovered during the process.

Accordingly, the Court finds that HSBC's proposed amendments as to impossibility, impracticability, and frustration of purpose would likely necessitate the reopening of discovery and require the Plaintiffs to expend significant resources. Amending these defenses would result in undue prejudice to the Plaintiff, and therefore will not be allowed by the Court.

### B. Futility

"A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss." Ballard v. Parkstone Energy, LLC, No. 06-cv-13099 (RWS), 2008 WL 4298572, at *3 (S.D.N.Y. Sep. 19, 2008) (quotation omitted). Thus, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010) (citation omitted).

Plaintiffs failed to argue that HSBC's proposed champerty defense would be futile, but for a minor argument that champerty is an affirmative defense that was already waived, citing Phoenix Light SF Ltd v. Bank of New York Mellon, No. 14-cv-10104 (VEC), 2020 WL 2950799, slip op. at *1–2 (S.D.N.Y. Jun. 3, 2020). In that case, however, Judge Caproni found that the defendant had waived its champerty defense when it was raised for the first time in its *second summary judgment motion*—not in a motion to amend before summary judgment was filed. See id. at ECF No. 341. Indeed, Plaintiffs recognize that Judge Caproni recently allowed the defendants in another case in a very similar posture to add a champerty defense, where "no scheduling deadline for amending the pleadings had been entered [and the] action had not yet reached summary judgment." Phoenix Light SF DAC, et al. v. The Bank of New York Mellon, No. 18-cv-01194 (VEC), slip op., ECF. No. 160 at *1 (S.D.N.Y. Aug. 14, 2020). Accordingly, the Court finds that Plaintiffs have not met their burden of showing that HSBC's champerty defense would be futile.

Because HSBC's impossibility, impracticability, and frustration of purpose defenses would result in undue prejudice—and are denied on those grounds—the Court does not discuss whether or not they would be futile.

## CONCLUSION

HSBC's motion to amend its Answer is GRANTED in part. It may amend its Answer to add its champerty defense. The motion to add impossibility, impracticability, and frustration of purpose defenses, however, is DENIED. Respectfully, the Clerk of Court is directed to terminate the motion at ECF No. 361.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

Dated: February 16, 2021
       New York, New York