**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| PHOENIX LIGHT SF LTD., *et al.*, |
| Plaintiffs, |
| v. |
| HSBC BANK USA, NATIONAL ASSOCIATION, |
| Defendant. |

**Case No. 14-cv-10101-LGS-SN**

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT HSBC BANK USA, N.A.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii
GLOSSARY OF TERMS AND ABBREVIATIONS ............................................... vii
CHART OF SUMMARY JUDGMENT ARGUMENTS ........................................... ix
INTRODUCTION ...................................................................................................... 1
LEGAL STANDARD ................................................................................................ 4
ARGUMENT ............................................................................................................. 4

I.     PLAINTIFFS' CLAIMS FAIL FOR LACK OF STANDING ....................... 4
        A.     As a matter of law, Plaintiffs are collaterally estopped by the prior determination that they lack standing. ........................................... 4
        B.     Plaintiffs in fact lack standing ...................................................... 6

II.    THE CLAIMS OF PHOENIX LIGHT SF LIMITED ARE TIME BARRED UNDER GERMAN LAW. ............................................................. 9
        A.     New York's borrowing statute looks to the German limitations period with respect to Phoenix Light SF Limited's claims .......... 9
        B.     The German statute of limitations bars Phoenix Light's claims .... 10

III.   HSBC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' PRE-EOD DOCUMENT DEFECT CLAIMS. .............................................. 11
        A.     Plaintiffs' document-defect claims are untimely under New York law. ............................................................................................ 11
        B.     FHLT 2006-C and NAA 2006-AR5 do not obligate the Trustee to "enforce" the warrantors' repurchase obligations. ..................... 14

IV.   HSBC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' PRE-EOD R&W BREACH CLAIMS. ......................................................... 14
        A.     For FHLT 2006-C and NAA 2006-AR6, Plaintiffs have offered no loan-specific evidence of R&W breaches. ................................... 15
        B.     For ACE 2005-AG1, there is no evidence that HSBC discovered or received notice of R&W breaches in the 329 "No-Notice Loans." .......... 15
        C.     HSBC satisfied any duties as to 5 of the 7 Disputed Loans (the "Repurchase Request Loans"). ...................................................... 17
            1.    "Shall enforce" does not mean unilaterally pursue litigation. ....................................................................... 18
            2.    Undisputed course of conduct evidence contradicts Plaintiffs' litigation position about the meaning of "shall enforce." ..................................................................... 19
        D.     Plaintiffs' R&W Claims are time-barred for 4 of the 7 disputed loans (the "Early Letter Loans"). ................................................. 20

V.    HSBC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' EOD CLAIMS. ........................................................................................... 20
        A.     There is no evidence that a master servicer event of default occurred. ...................................................................................... 21
        B.     There is no evidence that HSBC knew of any master servicer event of default. ............................................................................ 24

|  |  | C. | HSBC satisfied any required duties. | 24 |

        C.    HSBC satisfied any required duties. ...........................................................24

        D.    Plaintiffs' post-EOD document-defect claims are time barred under New York law. ........................................................................................25

VI.     HSBC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR SERVICING DAMAGES. .................................................27

        A.    HSBC is entitled to summary judgment as to any pre-EOD servicing damages. ..................................................................................28

        B.    Plaintiffs' post-EOD servicing claims fail. .........................................29

        C.    There is no evidence of servicing damages in NAA 2006-AR6. ............30

VII.    THERE IS NO EVIDENCE OF BAD FAITH. ..............................................30

VIII.   THERE ARE NO VALID CLAIMS UNDER THE TRUST INDENTURE ACT OR THE STREIT ACT .......................................................................31

IX.     PLAINTIFFS HAVE NO VALID FIDUCIARY DUTY CLAIMS. ...........................31

X.      PLAINTIFFS ARE NOT ENTITLED TO THE DAMAGES THEY SEEK. ............33

        A.    Phoenix Light has failed to establish that it suffered any damages. ..........33

        B.    The PSAs for ACE 2005-AG1 and NAA 2006-AR6 bar the damages sought by Plaintiffs. ...................................................................33

        C.    Plaintiffs have no repurchase damages where the repurchase price is zero. ...................................................................................................36

        D.    Plaintiffs have no competent evidence of warrantor ability to pay. ..........37

CONCLUSION .........................................................................................................38

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*Ambac Assurance Corp. v. U.S. Bank N.A.*, 328 F. Supp. 3d 141 (S.D.N.Y. 2018)......................31

*Aretakis v. Caesars Ent.*, 2018 WL 1069450 (S.D.N.Y. Feb. 23, 2018) ..........................................8

*Argonaut P'ship v Bankers Tr. Co.*, 2001 WL 585519 (S.D.N.Y. May 30, 2001)........................21

*Baena v. Woori Bank*, 2006 WL 2935752 (S.D.N.Y. Oct. 11, 2006)........................................9, 10

*Bakal v. U.S. Bank, NA*, 747 F. App'x 32 (2d Cir. 2019) ............................................................23

*Bank of N.Y. Mellon v. WMC Mortg., LLC*, 2015 WL 13867151 (S.D.N.Y. Aug. 18, 2015) ............................................................................................................................36, 37

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146 (2d Cir. 1995) ............................................................................................................................8

*BlackRock Allocation Target Shares: Series S Portfolio v. U.S. Bank N.A.*, 2015 WL 2359319 (S.D.N.Y. May 18, 2015)..............................................................................28

*BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, N.A.*, 247 F. Supp. 3d 377 (S.D.N.Y. 2017)..........................................................................31

*Carco Grp. v. Maconachy*, 383 F. App'x 73 (2d Cir. 2010) ........................................................34

*Carco Grp. v. Maconachy*, 718 F.3d 72 (2d Cir. 2013)................................................................35

*CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450 (S.D.N.Y. 2010)........................3

*Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756 (S.D.N.Y. 2013)........................................................................................................4

*Commerzbank AG v. HSBC Bank N.A.*, 2016 WL 3211978 (S.D.N.Y. June 8, 2016)................31

*Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010) ............................................................................23

*Creative Transaction Corp. v. Monroe Allen Publishers, Inc.*, 2004 WL 60291 (S.D.N.Y. Jan. 12, 2004)........................................................................................................33

*Deutsche Zentral-Genossenschaftsbank AG v. Bank of America Corp. (In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.)*, 2014 WL 4162382 (C.D. Cal. June 18, 2014) ..........9

*DiSorbo v. Hoy*, 343 F.3d 172 (2d Cir. 2003)..............................................................................5

iii

*Elliot Assocs. v. J. Henry Schroder Bank & Tr. Co.*, 838 F.2d 66 (2d Cir. 1988)........................28

*FDIC v. Drysdale*, 2013 WL 5695723 (E.D.N.Y. Nov. 7. 2013)..................................................35

*Fixed Income Shares: Series M v. Citibank*, 314 F. Supp. 3d 552 (S.D.N.Y. 2018)....................32

*In re GM Ignition Switch Litig.*, 407 F. Supp. 3d 212 (S.D.N.Y. 2019)........................................33

*Int'l Ore & Fertilizer Corp. v. SGS Control Servs.*, 38 F.3d 1279 (2d Cir. 1994) .......................35

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ..........................................................5

*L-7 Designs, Inc. v. Old Navy, LLC,* 964 F. Supp. 2d 299 (S.D.N.Y. 2013)................................30

*Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) ..............................................22

*Marvel Characters v. Simon*, 310 F.3d 280 (2d Cir. 2002) ...........................................................6

*MVP Health Plan, Inc. v. OptumInsight, Inc.*, 2017 WL 3669558 (N.D.N.Y. Aug. 24, 2017) ...............................................................................................................................34, 35

*N. Indus. Holdings, LLC v. E. Env't Grp.*, 2016 WL 8541049 (N.D.N.Y. Feb. 23, 2016) ..........35

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010) ....................19

*Nouveau Elevator Indus. v. Cont'l Cas. Ins. Co.*, 2006 WL 1720429 (E.D.N.Y. June 21, 2006) ...............................................................................................................................30

*Optima Media Grp. v. Bloomberg L.P.*, 2018 WL 1587074 (S.D.N.Y. Mar. 28, 2018) ..............34

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)....................................................................6

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017) ............................................................................................................. *passim*

*Phoenix Light SF Ltd. v. U.S. Bank N.A.*, --- F. Supp. 3d ---, 2020 WL 1285783 (S.D.N.Y. Mar. 18, 2020) ..........................................................................................2, 4, 10

*Royal Park Invs. SA/NV. v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 4682220 (S.D.N.Y. Sept. 28, 2018) ...............................................................................................15, 37

*Royal Park Invs. SA/NV v. HSBC Bank USA N.A.*, 109 F. Supp. 3d 587 (S.D.N.Y. 2015) ............................................................................................................23, 24, 25

*Royal Park Invs. SA/NV v. HSBC Bank USA N.A.*, 2017 WL 945099 (S.D.N.Y. Mar. 10, 2017) ...........................................................................................................17, 25, 26

*Royal Park Invs. SA/NV v. U.S. Bank N.A.*, 2018 WL 3350323 (S.D.N.Y. July 9, 2018).......37, 38

*Rutgerswerke AG & Frendo S.p.A. v. Abex Corp.*, 2002 WL 1203836 (S.D.N.Y. June 4, 2002) ....................................................................................................................................11

*Schonfeld v. Hilliard*, 218 F.3d 164 (2d Cir. 2000) ............................................................34, 36

*Starr Int'l U.S.A. Invs., LC v. Ernst & Young, LLP*, 131 F. Supp. 3d 241 (S.D.N.Y. 2015)..........4

*Triaxx Prime CDO 2006-1, Ltd. v. Bank of N.Y. Mellon*, 2018 WL 1417850 (S.D.N.Y. Mar. 8, 2018)...................................................................................................................33

*U.S. Bank, N.A. v. UBS Real Estate Secs. Inc.*, 205 F. Supp. 3d 386 (S.D.N.Y. 2016)................17

## STATE CASES

*ACE Secs. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581 (N.Y. 2015)...............................13

*B.R. DeWitt, Inc. v. Hall*, 278 N.Y.S.2d 596 (N.Y. 1967) ..............................................................6

*Bank of N.Y. Mellon v. WMC Mortg., LLC*, 56 N.Y.S.3d 1 (1st Dep't 2017) ..............................13

*Beck v. Mfrs. Hanover Tr. Co.*, 632 N.Y.S.2d 520 (1st Dep't 1995).....................................26, 27

*Blackrock Balanced Cap. Portfolio (FI) v. U.S. Bank N.A.*, 86 N.Y.S.3d 484 (N.Y. App. Div. 2018) .................................................................................................................23

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726 (N.Y. 2000) .............................9

*Brad H. v. City of New York*, 17 N.Y.3d 180 (N.Y. 2011) .............................................................19

*Buechel v. Bain*, 97 N.Y.2d 295 (N.Y. 2001) ...........................................................................5, 6

*Commerce Bank v. Bank of N.Y. Mellon*, 35 N.Y.S.3d 63 (N.Y. 2016) ........................................17

*Dormitory Auth. of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704 (N.Y. 2018) ............................32

*FHFA v. Morgan Stanley ABS Cap. I Inc.*, 73 N.Y.S.3d 374 (N.Y. Sup. Ct. N.Y. Cty. 2018) ......................................................................................................................13

*Fixed Income Shares: Series M v. Citibank, N.A.*, 69 N.Y.S.3d 288 (N.Y. App. Div. 2018) ...................................................................................................................23

*Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562 (N.Y. 2002) .................................................19

*IKB Int'l, S.A. v. LaSalle Bank, N.A*, 2021 WL 358318 (N.Y. Super. Ct. Jan. 27, 2021) ............13

*Justinian Cap. SPC v. WestLB AG*, 28 N.Y.3d 160 (N.Y. 2016) ................................................7, 8

*MMS USA Holdings v. PricewaterhouseCoopers LLP*, 2013 WL 1154932 (N.Y. Sup. Ct. Mar. 19, 2013).........................................................................................................34, 35, 36

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572 (N.Y. 2017) ...........................................................................................34

*Parkhurst v. Berdell*, 110 N.Y. 386 (1888).....................................................................................5

*Putman High Yield Tr. v. Bank of N.Y.*, 776 N.Y.S.2d 796 (N.Y. App. Div. 2004).....................21

*Trust for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 13 N.Y.3d 190 (N.Y. 2009) .............................................................................................8

*Waverly Corp. v. City of New York*, 851 N.Y.S.2d 176 (N.Y. App. Div. 2008) ..........................19

## STATUTES, RULES, AND REGULATIONS

Fed R. Civ. P. 56.............................................................................................................................4

N.Y. C.P.L.R. 202............................................................................................................................9

N.Y. Jud. Law § 489........................................................................................................................7

## GLOSSARY OF TERMS AND ABBREVIATIONS

### Parties/At-Issue Trusts

*Defendant* – HSBC Bank USA, N.A.

*Plaintiffs* – when capitalized, refers to the Plaintiffs in this case: (1) C-BASS CBO XVII Ltd. ("C-BASS"), (2) Kleros Preferred Funding V PLC ("Kleros"), and (3) Phoenix Light SF Ltd. ("Phoenix Light").

*Trusts* – the Trusts at issue in this motion:  (1) ACE 2005-AG1; (2) FHLT 2006-C; and (3) NAA 2005-AR6.

### Background Terminology

*Collateral* – residential mortgage loans placed into an RMBS trust.

*Custodian* – maintains certain mortgage documents throughout the life of the loan.

*EOD* – event of default – events that are contractually defined in the PSA.

*PSA* – pooling and service agreement – sets forth the contractual relationships, rights, and responsibilities of trust parties.

*Master Servicer* – oversees the servicer.

*MLPA* – mortgage loan purchase agreement – governs the sale of the mortgage loans, and includes representations and warranties made by the sponsor/seller concerning the characteristics, quality, and risk profile of the mortgage loans.

*Pro Supp* – prospectus supplement – a communication (the contents of which are regulated by the Securities Act) offering a security for sale.

*Repurchase* – a remedy provided in the PSA in which the responsible party (typically the seller or sponsor) re-purchases a loan at a contractually-defined purchase price due to uncured material R&W breaches or uncured material document defects in mortgage files.

*RMBS* – residential mortgage-backed security, in which an investment bank (the "sponsor" or "seller") acquires mortgage loans from loan "originators" and conveys them (through a "depositor") to an RMBS trust.

*RMBS Certificates* – represents certain rights to specified cash flows derived from the securitized mortgages.  Certificates are issued in various classes that establish a priority designed to increase the likelihood that senior certificate owners receive regular payments of principal and interest and junior certificate owners are first to experience losses when borrowers fail to pay, default, or foreclosure occurs.

vii

*R&W* – representations and warranties – specified in the MLPA and PSA.

*Servicer* – administers the underlying loans in an RMBS trust, including interacting with borrowers, collecting payments, modifying loans, and foreclosing.

*Trustee* – performs duties set out in the PSA.  HSBC was the trustee for the at-issue Trusts.

*Warrantor*:  Generic reference to entities responsible for originating, pooling, and making representations and warranties regarding the loans in the trusts.

## **Procedural**

*56.1*:  Defendant HSBC Bank USA, N.A.'s Statement of Material Facts Not in Dispute.

*Acebedo Decl.*:  Declaration of HSBC employee Fernando Acebedo.

*Bennett Decl.*: Declaration of Thomas B. Bennett, expert witness for HSBC.

*Rohe Decl.*: Declaration of Dr. Mathias Rohe, expert witness for HSBC.

*Underwood Decl.*:  Declaration of HSBC attorney Matthew Underwood.

## **Frequently-Cited Rulings/Authorities**

*MTD Op.* – This Court's ruling (ECF No. 43) on HSBC's motion to dismiss in this case and other coordinated cases.

*Sampling Op.* – This Court's ruling (ECF No. 302) on the permissibility of extrapolating damages and liability from a sample of loans.

*PL/BNYM – Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 2017 WL 3973951, at *9 (S.D.N.Y. Sept. 7, 2017).

*PL/USB – Phoenix Light SF Ltd. v. U.S. Bank N.A.*, 2020 WL 1285783 (S.D.N.Y. Mar. 18, 2020) ("*PL/USB*"), *reconsideration denied*, 2020 WL 4699043 (Aug. 12, 2020), *appeal docketed*, No. 20-1312-cv, No. 20-2762 (2d Cir.).

## CHART OF SUMMARY JUDGMENT ARGUMENTS

| | Argument | Trust | | |
|---|---|---|---|---|
| | | ACE 2005-AG1 | FHLT 2006-C | NAA 2006-C |
| Standing | Plaintiffs Lack Standing | Y | Y | Y |
| Statute of Limitations | Phoenix Light's Claims Are Time Barred Under German Law | N/A | Y* | Y |
| | Pre-EOD Document-Defect Claims Are Time Barred Under NY Law | Y | Y | Y |
| Claim-Specific Arguments | Pre-EOD Document-Defect Claims Fail Due to Lack of Duty | N | Y | Y |
| | Pre-EOD R&W Claims Not Asserted/No Evidence | N | Y | Y |
| | Pre-EOD R&W Claims Fail for Lack of Evidence of Breach/Knowledge | 329 of 336 loans | N/A | N/A |
| | Pre-EOD R&W Claims Fail for Lack of Evidence of that HSBC Failed To Fulfill Duties | 5 of 7 Disputed Loans | N/A | N/A |
| | Pre-EOD R&W Claims Are Time Barred Under NY Law | 4 of 7 Disputed Loans | N/A | N/A |
| | EOD Claims Fail for Lack of Evidence | Y | Y | Y |
| | Servicing Claims Fail Because HSBC Does Not Supervise Servicers | Y | Y | Y |
| | Servicing Claims Not Asserted/ Lack of Evidence | N | N | Y |
| | Implied Covenant of Good Faith and Fair Dealing Claims Fail For Lack of Evidence | Y | Y | Y |
| | TIA and Streit Act Claims Fail As a Matter of Law | Y | Y | Y |
| | Fiduciary Duty Claims Fail For Lack of Evidence | Y | Y | Y |

ix

| Damages | Phoenix Light suffered no losses | N/A | Y* | Y |
|---|---|---|---|---|
| | Damages Limitation Clause Bars Damages Plaintiffs Seek | Y | N | Y |
| | Repurchase Price is Zero | Y | N | N |
| | There Is No Evidence of Warrantor Ability to Pay | N | Y | N |
| **Summary Judgment on All Claims** | | Y | Y | Y |

1. Phoenix Light SF Ltd. ("Phoenix Light") claims to have acquired certificates in two Trusts: (1) FHLT 2006-C and (2) NAA 2005-AR6.  Phoenix Light owns all of the at-issue certificates in NAA 2005-AR6; some in FHLT 2006-C; and none in ACE 2005-AG1.

2. Y* indicates the argument affects only Phoenix Light SF Ltd.'s claims.

## INTRODUCTION

This motion for summary judgment pertains to claims relating to three RMBS trusts chosen through a bellwether process (the "Trusts"), and three "Plaintiffs" that assert such claims. The Plaintiffs are structured investment vehicles that exist only on paper; they re-securitize high-risk/high-reward RMBS and pursue litigation as an investment strategy.  56.1 ¶¶ 2, 8–14.

This case has followed a pattern repeated in cases against RMBS trustees.  At the pleadings stage, the Court (Judge Scheindlin) dismissed numerous claims and warned that generalized allegations of pervasive breach, government investigations, and the like would not stave off summary judgment without loan-by-loan, trust-by-trust evidence of specific breaches, actual knowledge, written notice, and damages.[1]  In other cases, the Phoenix Light plaintiffs have not fared well at summary judgment.  In the first RMBS trustee case in this district to reach summary judgment, the Phoenix Light plaintiffs lost most of their claims.[2]  Judge Caproni rejected reliance on generalized evidence, and held with limited exceptions that the Phoenix Light plaintiffs failed to present loan-by-loan and trust-by-trust evidence of trustee knowledge.[3]  Judge Caproni allowed claims to proceed *only* where plaintiffs could identify contemporaneous communications that raised a triable issue of fact regarding the trustee's knowledge, *id*. at *9–*10, or where defendant conceded an event of default had occurred, *id*. at *13.  Judge Broderick

_____

[1] Opinion & Order, *Phoenix Light SF Ltd., et al. v. HSBC Bank USA N.A.*, 14-cv-10101, ECF No. 43 ("MTD Op."), at 20, 22, 30.
[2] *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 2017 WL 3973951, at *9 (S.D.N.Y. Sept. 7, 2017) ("*PL/BNYM*").
[3] *PL/BNYM*, 2017 WL 3973951, at *8 ("Although allegations of the Trustee's generalized knowledge of breaches may be sufficient at the pleadings stage . . . by summary judgment or trial the plaintiffs must present evidence that proves a specific breach of a representation or warranty as to any loan or trust for which plaintiffs allege there was a breach.") (citations omitted).

recently granted summary judgment against Phoenix Light on *all* claims for lack of standing.[4]

The claims in this case suffer these same deficiencies, among others, and the outcome should be no different. *First*, Plaintiffs lack standing because they do not own the RMBS certificates at issue, and the assignments purportedly authorizing them to sue are void under New York law. Judge Broderick's holding is collateral estoppel and disposes of *all* claims. *Second*, the vast majority of Plaintiffs' claims collapse under a straightforward application of the rationales of Judge Scheindlin (on the motion to dismiss in this case) and Judge Caproni (on summary judgment in *PL/BNYM*), which, on the undisputed factual record here, compels three conclusions: (1) all document-defect claims are time barred, (2) the R&W claims fail as to 329 of 338 loans,[5] and (3) post-EOD claims fail because Plaintiffs do not establish that specific events of default ("EOD") occurred under the requirements of the PSAs.

To the extent any claims remain, they suffer from other problems. This Court previously made clear that HSBC is not liable for duties assigned to other parties. MTD Op. 35. The governing agreements leave no room for argument: "None of the . . . Master Servicer, the Servicer, the Seller . . ., the Custodian . . . , or the Trustee shall be responsible for the acts or omissions of the others . . . ." 56.1 ¶ 50. Nor may Plaintiffs base claims on implied duties. 56.1 ¶ 55. Yet, Plaintiffs attempt to do precisely these things. Specifically, Plaintiffs seek to recover damages resulting from (1) *servicers'* allegedly poor performance in administering loans; and (2) document defects and R&W breaches for which the *sellers* are expressly responsible.

---

[4] *See Phoenix Light SF Ltd. v. U.S. Bank N.A.*, --- F. Supp. 3d ---, 2020 WL 1285783, at *16, (S.D.N.Y. Mar. 18, 2020) ("*PL/USB*"), *reconsideration denied*, 2020 WL 4699043 (Aug. 12, 2020), *appeal docketed*, No. 20-1312-cv, No. 20-2762 (2d Cir.).

[5] The remaining pre-EOD R&W claims on 7 loans also fail for various other reasons explained below.

With regard to servicing damages, a servicing duty is *not* assigned to the trustee under the governing agreements, and the responsibility for *supervising* servicers expressly is assigned to another party—the master servicer.  56.1 ¶ 80.  With regard to the sellers' repurchase obligations (in connection with either document defects or R&W breaches), in two of the three trusts, the trustee has no duty to enforce that obligation.  56.1 ¶ 53.   In the only trust that includes such a duty, loan-by-loan discovery or notice is required, and it is beyond dispute this did not occur for 329 of 338 loans. In any event, the enforcement duty does not convert the trustee into guarantor or insurer of the sellers' obligations or Plaintiffs' investment performance, 56.1 ¶ 4, nor does it turn the trustee into a private attorney general obligated to unilaterally pursue costly, uncertain, and time-consuming litigation absent direction and indemnification from investors.  56.1 ¶ 73. HSBC's duties "are limited, administrative, and ministerial (rather than substantive) in nature," *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 473 (S.D.N.Y. 2010), and any notion HSBC has broader responsibility is belied by its nominal compensation of $3,500 per year per Trust, 56.1 ¶ 6.

Moreover, this case—which is a last-ditch effort to shift purely economic investment losses from sophisticated investors to a ministerial party—founders between a rock and a hard place.  Plaintiffs must identify loan- or trust-specific triggering events during a narrow window of time that is *no earlier than* six years (or three years under German law) before they filed this action.  But those events must also occur *no later than* the time when the responsible parties' obligation expired, which for repurchase of loans was 2011 or 2012.  Plaintiffs attempt to escape this unsurmountable hurdle by deploying litigation-driven arguments like "continuing" and "ripening" duties to contend their claims accrued in the sweet-spot in which they were precisely neither too late nor too early.  But the Court previously rejected the malleable "continuing duty"

argument, MTD Op. 36, dooming Plaintiffs' claims.  Plaintiffs' claims also fail for many

additional reasons, as discussed below.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted where "there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56.  To avoid summary judgment, "the non-moving party must come

forward with admissible evidence sufficient to raise a genuine issue of fact for trial."  *Starr Int'l*

*U.S.A. Invs., LC v. Ernst & Young, LLP*, 131 F. Supp. 3d 241, 249 (S.D.N.Y. 2015).

"Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of

fact."  *Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761

(S.D.N.Y. 2013).

## ARGUMENT

### I.    PLAINTIFFS' CLAIMS FAIL FOR LACK OF STANDING.

#### A.    As a matter of law, Plaintiffs are collaterally estopped by the prior determination that they lack standing.

The three Plaintiffs sue to recover alleged investment losses in connection with RMBS

certificates in the Trusts ("Certificates").  However, in a similar case brought by Phoenix Light

plaintiffs against another trustee, this Court held that the plaintiffs there (which include each of

the three Plaintiffs here) had given away their litigation rights to other entities, CDO trustees,

when they issued securities backed by their RMBS certificates.  *See PL/USB*, 2020 WL 1285783,

at *16.  On summary judgment, the Court subsequently held that the attempt of the CDO trustees

to assign litigation rights back to the Plaintiffs was void under New York law, and judgment was

entered against the plaintiffs for lack of standing.  *Id.*  Plaintiffs rely upon the same documents

for standing here, 56.1 ¶¶ 40–42, and therefore suffer the same lack of standing that led to the adverse judgment in *PL/USB*.

"Collateral estoppel precludes a party from re-litigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity." *See Buechel v. Bain*, 97 N.Y.2d 295, 303 (N.Y. 2001). The requirements of collateral estoppel are satisfied here: (1) identity of issue that is decisive of the Plaintiffs' claims; and (2) "a full and fair opportunity" to establish standing. *Id.* at 304. The final judgment entered by the trial court in *PL/USB* binds the Plaintiffs on the issue of standing, and is dispositive of their claims here. Under long-standing New York law, the pendency of an appeal does not forestall collateral estoppel.[6] HSBC requests that the Court take judicial notice of the pleadings in *PL/USB*,[7] and enter summary judgment in favor of HSBC on all claims.

The issue of Plaintiffs' standing was decided in *PL/USB*. That decision involved the effect of transactions undertaken by Plaintiffs to re-securitize their RMBS certificate holdings. 56.1 ¶¶ 33–42. Specifically, the Court held that in the re-securitization transactions, Plaintiffs had granted all rights in their RMBS certificates, including any right to initiate litigation, to the CDO trustees, which were not parties to that case (and are not parties here). 56.1 ¶¶ 40–42. On summary judgment, the Court subsequently held that the attempt of the CDO trustees to assign the right to bring litigation back to the plaintiffs was void under New York law. 56.1 ¶ 42.

_____

[6] *See Parkhurst v. Berdell*, 110 N.Y. 386, 392 (1888) (holding that "the appeal did not suspend the operation of the judgment as an estoppel" and "its reception was not rendered erroneous by the subsequent reversal of the judgment."); *see also DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003).

[7] Case No. 14-cv-10116 (S.D.N.Y.); Case No. 20-2762 (2d Cir.); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("Courts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.").

The very same granting clauses and assignments that the *PL/USB* Court held insufficient to confer standing are at issue here.  56.1 ¶ 41.  Accordingly, there is an identity of issue decisive of the Plaintiffs' claims.  Collateral estoppel precludes a party from re-litigating the interpretation and validity of contracts.  *See Buechel*, 97 N.Y.2d at 306 (holding that collateral estoppel bars re-litigation of contract interpretation by party "hoping that the second time around a court will reach a contrary determination.").[8]

Plaintiffs' pre-motion letter grasps at irrelevant distinctions between this case and *PL/USB*, as well as frivolous legal arguments.  *First*, the *PL/USB* Court predicated Plaintiffs' lack of standing on the exact same transactions and assignments that Plaintiffs rely upon here; the involvement of "different securities" is a red herring.  *Second*, New York law has led the way in permitting "a different defendant" to estop a party on issues previously decided adversely to it.[9]  *Third*, Plaintiffs cannot meet *their* burden of establishing lack of a full and fair opportunity to contest the adverse prior judgment, *Buechel*, 97 N.Y.2d at 306, because the record—including *four* comprehensive judicial opinions—demonstrates Plaintiffs' full participation and the *PL/USB* Court's careful consideration.

## B.    Plaintiffs in fact lack standing.

Even if there were no collateral estoppel, Plaintiffs' claims would fail for lack of standing.  Upon acquisition of the Certificates, Plaintiffs transferred all "right, title, and interest,"

---

[8] *Marvel Characters v. Simon*, 310 F.3d 280 (2d Cir. 2002), cited in Plaintiffs' pre-motion letter, is inapposite.  *Marvel*'s holding on estoppel did not turn on identity of issue but rather the fact that the prior actions did not result in "any specific findings" on the issue in question.  *Id*. at 289.
[9] *B.R. DeWitt, Inc. v. Hall*, 278 N.Y.S.2d 596, 601 (N.Y. 1967) ("To recapitulate, we are saying that the 'doctrine of mutuality' is a dead letter."); *cf. Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) (holding that lack of mutuality does not prevent application of collateral estoppel).

including the right "to file any claims or take any action or institute any proceedings," or (alternatively in other grants) "all its present and future, actual and contingent claims and rights" in the Certificates.  56.1 ¶¶ 29–31.  This divested Plaintiffs of any right to initiate litigation in connection with the Certificates.  56.1 ¶¶ 40–42.

On December 12, 2014, in a futile attempt to manufacture standing, Phoenix Light directed each CDO Indenture Trustee to assign to Plaintiffs the right to litigate specific cases, including this one and *PL/USB*.  56.1 ¶ 32.  Between April and June 2015, the CDO trustees purported to assign the right to litigate to Plaintiffs.  56.1 ¶¶ 33–34, 39.  Plaintiffs' witnesses have admitted under oath the facts establishing that these assignments are void under New York law.  56.1 ¶¶ 36–38.

New York's prohibition on champerty is codified in New York Judiciary Law section 489, which provides in pertinent part that "no corporation . . ., directly or indirectly, . . . shall solicit, buy or take an assignment . . . of . . . any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon."  N.Y. Jud. Law § 489(1).  In *Justinian Capital*, the Second Circuit held that because "the lawsuit was not merely an incidental or a secondary purpose of the assignment, but its very essence," the assignment was champertous. *Justinian Cap. SPC v. WestLB AG*, 28 N.Y.3d 160, 168 (N.Y. 2016).  "[T]he critical issue" is "the *purpose* behind [the plaintiff's] acquisition of rights."  *Id.* at 167 (alteration in original). When "the primary purpose of the purchase [is] to enable" the purchaser "to bring a suit," that is champerty.  *Id*. at 166.

Plaintiffs' Rule 30(b)(6) designee admitted that Plaintiffs "sought [the] CDO trustee assignments for the purpose of bringing this litigation" and for no "other purpose."  56.1 ¶ 36. Plaintiffs' directors also testified that "the purpose of [the CDO trustee] reassignment agreements

was to allow [Plaintiffs] to bring legal claims relating to RMBS," and that they did not believe there was "any other purpose for which the Plaintiff CDOs entered into the CDO trustee agreements." 56.1 ¶ 37.  Plaintiffs further agreed that it was their "view that . . . absent those alleged reassignments, these claims would not be brought against the RMBS trustees." 56.1 ¶ 38.

As in *Justinian*, this action "was not merely an incidental or secondary purpose of the assignment, but its very essence." 28 N.Y.3d. at 168.  The CDO indenture trustees did not bring these claims, and instead attempted to assign them to Plaintiffs, at Plaintiffs' request, so that Plaintiffs could pursue litigation.  Plaintiffs' assignments are void because their sole "purpose [was] to allow Plaintiff[s] to prosecute this case to obtain a money judgment."  *Aretakis v. Caesars Ent.*, 2018 WL 1069450, at *9 n.8, *10 (S.D.N.Y. Feb. 23, 2018).

Plaintiffs have argued that the assignments are not champertous because they held "a preexisting proprietary interest" in the claims.  *Trust for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 195 (N.Y. 2009).  This argument fails because the Plaintiffs held no proprietary interest in the claims when they received the assignments; each Plaintiff had already executed a "full assignment" of all "rights, title and interest" to their CDO indenture trustees, which "divest[ed] plaintiffs of any rights they otherwise may have had" in those claims.  *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 152 (2d Cir. 1995) (grant of "all rights, title and interest" resulted in a "transfer" of all claims).  *Love Funding* also is inapplicable because there is no need to look beyond the Plaintiffs' deposition testimony and the face of the agreements to conclude that the assignments were made for the sole purpose of pursuing this litigation.  Plaintiffs' witnesses

8

identified no other purpose, even when prompted.  56.1 ¶¶ 36–37.[10]  And the agreements make clear on their face that they were entered in response to the Court's Order dismissing plaintiffs' claims in PL/USB on May 18, 2015.  *See* 56.1 ¶¶ 33–34.  Plaintiffs owned neither the Certificates nor claims on them when they commenced this action.  Because the assignments from the Indenture Trustees are invalid, the Plaintiffs lack standing.

## II.   THE CLAIMS OF PHOENIX LIGHT SF LIMITED ARE TIME BARRED UNDER GERMAN LAW.

### A.   New York's borrowing statute looks to the German limitations period with respect to Phoenix Light SF Limited's claims.

The three-year German statute of limitations applies to Phoenix Light's claims under New York's borrowing statute under which "the shorter of either New York's statute of limitations or the statute of limitations . . . of the jurisdiction in which the cause of action accrued is applied to a claim brought by a non-resident."  N.Y. C.P.L.R. 202.

Because Phoenix Light's claimed economic injury was felt in Germany, rather than in Ireland where it is incorporated, New York law deems the injury to have accrued in Germany. *Baena v. Woori Bank*, 2006 WL 2935752, at *6 (S.D.N.Y. Oct. 11, 2006).  To determine where injury is felt, courts look to factors like how and where plaintiff paid for securities, where the accounts that incurred the loss were, and where the securities were handled.[11]  But the dispositive questions—which are conclusively answered by the undisputed facts here—are "who became poorer and where did they become poorer?"  *Baena*, 2006 WL 2935752, at *7 (cleaned up).

---

[10] Plaintiffs' witnesses did not, for example, say that they obtained the assignments to gain some business benefit, to leverage risks, or even to make a profit.  *Cf. Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726, 737–38 (N.Y. 2000).

[11] *Deutsche Zentral-Genossenschaftsbank AG v. Bank of America Corp.* (*In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*), 2014 WL 4162382, at *3 (C.D. Cal. June 18, 2014).

9

Phoenix Light is a shell created by German entities to move toxic assets off the books of its German owners.  56.1 ¶¶ 12, 23; *PL/USB*, 2020 WL 1285783, at *4 ("In fact, Phoenix Light was created in part to hold certain of WestLB's distressed assets.").  It remains wholly owned and controlled by German entities.  56.1 ¶¶ 23–26.  German entities directed the acquisition of the at-issue RMBS certificates from Germany.  56.1 ¶¶ 20–22.  German entities dictated the price that Phoenix Light would pay for them, also from Germany.  56.1 ¶¶ 12, 21–22.  All of the alleged losses for which Phoenix Light seeks to recover in this case have been felt in Germany.  56.1 ¶¶ 101–103.  German entities guaranteed Phoenix Light against any losses to € 5 billion and have paid Phoenix Light approximately € 1.4 billion to date to offset all losses.  56.1 ¶¶ 23–24, 101–103.  Phoenix Light has failed to offer any evidence to show it suffered any loss whatsoever. 56.1 ¶¶ 101–103.  It is the German guarantors, not Phoenix Light, that became "poorer," and this happened in Germany, not Ireland.  *Id.*  Whether or not the German entities who created Phoenix Light were knowingly attempting to circumvent the German statute of limitations by incorporating Phoenix Light in Ireland, it is clear that those German entities pulled all the strings from Germany and ultimately bore all the losses in Germany.  Under these unusual circumstances, the three-year German statute of limitations applies to Phoenix Light's claims. *Baena*, 2006 WL 2935752, at *6–7.

**B.**     **The German statute of limitations bars Phoenix Light's claims.**

German law dictates that the statute of limitations accrued no later than December 31, 2010, which is more than three years before Plaintiffs filed the complaint in this action.  Rohe Decl. ¶¶ 3, 27.  The facts underlying this conclusion, Rohe Decl. ¶¶ 14–19, 24–25, are not in dispute.  How German law would apply to those undisputed facts is a matter of law appropriate

for resolution on summary judgment.[12]  Here, German law and the undisputed facts demonstrate "the statute of limitations began to run on [Plaintiffs'] claims no later than December 31, 2010 and likely years earlier."  Rohe Decl. ¶ 3.  Plaintiffs' claims were time-barred under German law by December 31, 2013, nearly a year before the complaint was filed.  Rohe Decl. ¶ 3.

## III.    HSBC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' PRE-EOD DOCUMENT DEFECT CLAIMS.

Plaintiffs claim that HSBC was required unilaterally to seek repurchase of loans, including by resort to litigation, for loans listed in "exception reports" or certifications prepared by the custodians at trust closing.  56.1 ¶¶ 47–48.  These claims fail for several reasons.  *First*, any claims predicated upon these reports accrued more than six years before Plaintiffs filed suit, and are therefore time-barred.  *Second*, the enforcement duty upon which these claims rely exists in only one of the three Trusts; the claims necessarily fail in the other two trusts.

### A.    Plaintiffs' document-defect claims are untimely under New York law.

HSBC is entitled to summary judgment on Plaintiffs' document-defect claims.  Those claims are predicated upon exception reports and certifications created at trust closing (2005 and 2006 for the Trusts).  56.1 ¶¶ 47–48.  Because Plaintiffs delayed filing suit until December 2014, these claims are time barred under New York's six-year limitations period.

The PSAs assign responsibility for the "custody, acceptance, inspection, and release" of certain mortgage loan documents to the custodian, who makes certain certifications with regard to its review within 90–180 days after the closing date.  *See, e.g.,* ACE 2005-AG1 PSA § 2.01;

---

[12] "[D]isagreement among legal experts on content, applicability, or interpretation of foreign law . . . does not create genuine issues of material fact for summary judgment purposes."  *Rutgerswerke AG & Frendo S.p.A. v. Abex Corp.*, 2002 WL 1203836, at *16 (S.D.N.Y. June 4, 2002).

11

ACE 2005-AG1 Custodial Agreement §§ 4–5.  This Court dismissed Plaintiffs' claims arising

out of "preparing and delivering certification and exception reports," for the simple reason that

these were not HSBC's responsibilities, including for the three Trusts.  MTD Op. 33–36.  But

Judge Scheindlin also held that claims relating to delivery of allegedly defective documents must

be brought within six years of accrual, which with certain exceptions inapplicable to the Trusts,

was at or near trust closing.  MTD Op. 35–36.

Although Judge Scheindlin did not expressly address repurchase obligations of other

parties with regard to such missing or defective documents, her rationale also disposes of those

claims.  Plaintiffs' claims rest on the argument that information disclosed in the exception

reports and certifications provided notice of defective and missing documents that should have

been repurchased.  Indeed, each and every one of Plaintiffs' document-defect claims is based

upon information disclosed in the exception reports and certifications that were the subject of the

Court's previous ruling.  56.1 ¶ 47–48.  While HSBC disagrees that the exception reports

disclosed material defects, these claims are time barred in any event because any (disputed)

repurchase obligation associated with those reports and certifications would have accrued when

the reports and certifications were delivered (and the 60-day cure period lapsed)—i.e., at the

same time as the document delivery claims dismissed by the Court.  Any trustee enforcement

obligation arising out of the failure to repurchase—which also is disputed—would nevertheless

have accrued 90 days after delivery of the exception reports under Plaintiffs' theory.[13]  *See Bank*

---

[13] The ACE 2005-AG1 PSA states that "[u]pon discovery or receipt of notice of any materially
defective document in, or that a document is missing from, a Mortgage File . . . that materially
and adversely affects the value of such Mortgage Loan …" HSBC is to request that the
responsible party cure the defect within 60 days.  ACE 2005-AG1 PSA § 2.03.  If the seller fails

*of N.Y. Mellon v. WMC Mortg., LLC*, 56 N.Y.S.3d 1, 7 (1st Dep't 2017) (claim for failure to

repurchase "accrued after [defendant] failed to meet its backstop obligation following [another

party's] failure to repurchase the loans"); *ACE Secs. Corp. v. DB Structured Prods., Inc*., 25

N.Y.3d 581, 599 (N.Y. 2015) ("[T]he responsible party's] failure to cure or repurchase was not a

substantive condition precedent that deferred accrual of the Trust's claim; instead, it was a

procedural prerequisite to suit."); *FHFA v. Morgan Stanley ABS Cap. I Inc*., 73 N.Y.S.3d 374,

388–89 (N.Y. Sup. Ct. N.Y. Cty. 2018).

> A recent New York decision reached the same conclusion:

> The alleged breaches occurred on the dates on which the Trustees were first
> required, in connection with the closing of the Trusts, to perform the mortgage
> loan file obligations, *including not only the review and certification of the
> mortgage loan files but also any obligation to seek repurchase based on loan file
> defects*. The limitations period began at the time of those breaches . . . .

*IKB Int'l, S.A. v. LaSalle Bank, N.A*, 2021 WL 358318, at *6 (N.Y. Super. Ct. Jan. 27, 2021)

(emphasis added) (footnote omitted).[14]  Accordingly, *all* of the document-defect claims are time

barred under the rationale of Judge Scheindlin's motion to dismiss opinion and binding New

York law regarding the accrual of such claims.

> In an attempt to argue that their document-defect claims did not accrue until December

2008 or later (i.e., within six years of filing suit), Plaintiffs may try to point to allegedly different

---

to cure the defect, then 30 days later HSBC "shall enforce the obligations of the Seller under the
Mortgage Loan Purchase Agreement to repurchase such Mortgage Loan." *Id.*

[14] The opinion in the IKB case was issued in six cases involving six different financial
institutions that were sued in their capacities as RMBS trustees.  In addition to acting as a trustee,
some of these financial institutions performed other roles in their at-issue trusts, including as
Custodian, Paying Agent, and Securities Administrator.  HSBC does not perform such additional
functions in the Trusts.  Thus, HSBC had no duty here to perform a review of mortgage loan file
documents, though such claims still would have accrued at trust closing under Plaintiffs' theory
of liability.

triggering events as supposed evidence that the trustee did not "discover" or "receive notice" of missing or defective documents until years after the exception reports and certifications were created. Such theories are too late to save Plaintiffs' document-defect claims. The Court's motion to dismiss ruling forecloses any argument that accrual of the document-defect claims for the Trusts was delayed under any continuing-duty doctrine. MTD Op. 35–36.

   **B.    FHLT 2006-C and NAA 2006-AR5 do not obligate the Trustee to "enforce" the warrantors' repurchase obligations.**

Plaintiffs' document-defect claims also independently fail as to two of the three Trusts because the PSAs do not contain any language obligating the trustee to enforce the warrantors' repurchase obligations. Plaintiffs' damages expert Dr. Mason relies upon language in ACE 2005-AG1 stating that the Trustee "shall enforce" the repurchase obligation of the Seller. 56.1 ¶¶ 52, 54. That "shall enforce" language (which is necessary to Plaintiffs' document-defect and R&W claims), is absent from two Trusts. 56.1 ¶ 53.[15] Because the missing enforcement provisions cannot be implied in the PSAs that omit them, 56.1 ¶ 55, HSBC is entitled to summary judgment on Plaintiffs' document defect claims in FHLT 2006-C and NAA-AR6.

## IV.  HSBC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' PRE-EOD R&W BREACH CLAIMS.

Plaintiffs' claim that HSBC breached contractual duties that were triggered by notice or discovery of loan-specific R&W breaches fails for several reasons. *First*, with respect to the FHLT 2006-C and NAA 2005-AR6 trusts, Plaintiffs fail to present any evidence to support such claims, or damages from them. *Second*, for 329 of the 336 loans in the ACE 2005-AG1 trust (the

---

[15] In contrast to the document defect claims, Plaintiffs' damages expert restricts his analysis of R&W damages to the single trust with enforcement language. 56.1 ¶ 59.

14

"No Notice Loans") for which Plaintiffs assert material breaches, there is no evidence that HSBC had notice of (or discovered) any loan-specific R&W breach.  *Third*, for the remaining 7 loans (the "Disputed Loans"), for which there is a dispute of fact regarding notice, Plaintiffs cannot establish that HSBC did not satisfy its duties under the PSAs.  *Finally*, any R&W claims are time barred for 4 of the 7 Disputed Loans.

### A.    For FHLT 2006-C and NAA 2006-AR6, Plaintiffs have offered no loan-specific evidence of R&W breaches.

"[B]y summary judgment . . . plaintiffs must present evidence that proves a specific breach of a representation or warranty . . . on an individualized loan-by-loan basis."  *PL/BNYM*, 2017 WL 3973951, at *8 (internal quotation marks omitted).  That is because "the Trustee has neither the obligation nor the ability to demand cure, substitution, or repurchase of a nonconforming loan *unless*—among other things—it can identify an R&W breach . . . that 'materially and adversely' affects the value of that particular loan."  *Royal Park Invs. SA/NV. v. Deutsche Bank Nat'l Tr. Co*, 2018 WL 4682220, at *5 (S.D.N.Y. Sept. 28, 2018) ("*RP/DB*") (emphasis added).

With respect to two trusts—FHLT 2006-C and NAA 2005-AR6—Plaintiffs have offered no evidence of R&W breaches.  56.1 ¶¶ 57–59.  Plaintiffs' underwriting expert, Mr. Gary Shev, performed no re-underwriting in those two trusts, and he failed to identify a single breach in any loan. 56.1 ¶¶ 57–59.  Plaintiffs' damages expert, Dr. Joseph Mason, failed to identify any damages arising from R&W breaches in those trusts.  56.1 ¶ 59.  HSBC is therefore entitled to summary judgment on all R&W breach claims as to FHLT 2006-C and NAA 2005-AR6.

### B.    For ACE 2005-AG1, there is no evidence that HSBC discovered or received notice of R&W breaches in the 329 "No-Notice Loans."

With respect to the ACE 2005-AG1 trust, R&W breach claims fail for 329 of the at-issue

loans because there is no evidence that HSBC discovered or received notice of R&W breaches. HSBC is entitled to summary judgment on all loans for which it did not receive loan-specific notice ("No-Notice Loans").

This Court previously warned that at the summary judgment stage, Plaintiffs must prove the existence of any alleged breaches "loan-by-loan and trust-by-trust," MTD Op. 20, and recognized "[i]f after discovery, plaintiffs cannot prove that HSBC had actual knowledge regarding the loans at issue here, HSBC may move for summary judgment." MTD Op. 22.

That time has come. With regard to ACE 2005-AG1, through re-underwriting, Mr. Shev claims to have found material breaches in 336 loans.[16] For 329 of those 336 at-issue loans, however, there is *no* evidence that HSBC discovered or received notice of loan-specific breaches. 56.1 ¶ 60. The loan repurchase process contemplated under the PSAs is loan-specific, as is the notice or discovery requirement. *See NCUA/USB*, 2020 WL 764249, at *6 (trustee's receipt of "monthly reports of defaults and delinquencies," together with other evidence, was insufficient to "raise a plausible inference . . . that [trustee] discovered or received written notice of specified . . . warranty breaches") (emphasis added); *PL/BNYM*, 2017 WL 3973951, at *7 (granting summary judgment where plaintiffs presented no evidence "of [trustee's] knowledge of any specific breach of any representation or warranty"). Accordingly, PL's R&W claims regarding these 329 "No-Notice" loans cannot survive summary judgment.

Unable to meet their burden to demonstrate notice or discovery of loan-specific breaches of R&Ws, Plaintiffs may fall back on the uniformly rejected legal theory that HSBC *should have*

---

[16] HSBC disputes the validity of Dr. Shev's methodology and conclusions, and reserves the right to challenge his testimony at the appropriate time.

16

discovered the purported R&W breaches by investigating supposed "red flags."  The PSAs at issue, however, specifically provide that HSBC had no pre-EOD duty to investigate and no implied duties.  ACE 2005-AG1 PSA § 9.02(a)(v).  And it is well established that allegations of constructive knowledge or pervasive breach do not create a genuine issue of material fact in these cases.  *Royal Park Invs. SA/NV v. HSBC Bank USA N.A.*, 2017 WL 945099, at *4 (S.D.N.Y. Mar. 10, 2017) ("*RP/HSBC*") (collecting cases).[17]  Instead, Plaintiffs must present evidence that HSBC had "knowledge of specific breaches on the requisite loan-by-loan basis." *Id.* at *8.[18]

To the extent Plaintiffs' claim that HSBC had a duty to investigate potential breaches post-EOD, those claims fail for the reasons discussed below in Section V.

### C.   HSBC satisfied any duties as to 5 of the 7 Disputed Loans (the "Repurchase Request Loans").

HSBC received six letters alleging purported breaches in 7 Disputed Loans, but no such letters for the other 336 loans at issue.  56.1 ¶¶ 60–67.  The factfinder would have to decide whether the letters regarding these 7 loans provided notice of material breaches, triggering any duties.

---

[17] *See also Phoenix Light SF Ltd. v. U.S. Bank* ("*PL/USB*"), No. 14-cv-10104, ECF No. 201 (Sept. 7, 2017), at 14 (collecting cases); *PL/BNYM*, 2017 WL 3973951, at *7 (granting summary judgment where plaintiffs relied on evidence of "pervasive breaches" but presented no evidence "relative to any particular loan"); *U.S. Bank, N.A. v. UBS Real Estate Secs. Inc.*, 205 F. Supp. 3d 386, 425 (S.D.N.Y. 2016) ("The parties could have, but did not, bargain for additional remedies or a notice provision that did not turn on loan-specific knowledge.  The [plaintiffs] therefore may not rely on evidence of 'constructive knowledge' or 'pervasive breach' to prove [the trustee]'s knowledge of breached warranties.").

[18] "Importing a 'should have known' standard is also inconsistent with cases that have emphasized the limited role of an indenture RMBS trustee."  *RP/HSBC*, 2017 WL 945099, at *7; *see also Commerce Bank v. Bank of N.Y. Mellon*, 35 N.Y.S.3d 63, 65 (N.Y. 2016) ("[T]he trustee of an RMBS . . . trust does not have a duty to 'nose to the source.'") (internal citation omitted).

Whether or not that is so, however, Plaintiffs' claims as to 5 of these loans fail because HSBC fulfilled its duties by notifying the seller and requesting repurchase.  56.1 ¶¶ 61–79. HSBC in fact requested repurchase of these 5 "Repurchase Request Loans," notified certificateholders of the warrantors' response, and received no direction from any certificateholders to take further action.  56.1 ¶¶ 60–69.  To the extent Plaintiffs claim that the "shall enforce" language of the ACE 2005-AG1 PSA required the trustee to unilaterally pursue repurchase litigation—in other words, litigate without direction and indemnification from the certificateholders—the claims fail because Plaintiffs' interpretation of "shall enforce" is incorrect as a matter of law.

1.    **"Shall enforce" does not mean unilaterally pursue litigation.**

The language of the PSA unambiguously provides that the Trustee has no obligation to unilaterally litigate.  *First*, the Trustee is under no obligation to institute litigation unless directed and indemnified by certificateholders.  *See, e.g.*, ACE 2005-AG1 PSA § 9.02(a)(iii).  *Second*, the PSAs specifically exempt the Trustee from conducting any investigation, which would be necessary before litigating, without direction and indemnity from the certificateholders.  *See id.* § 9.02(a)(v).  *Third*, the PSAs expressly protect the Trustee from expending or risking its own funds and entitle the trustee to reasonable indemnity satisfactory to the trustee from the certificateholders.  *Id.* § 9.02(c).  *Fourth*, the PSAs provide that the trustee's duties and obligations are "determined solely by the express provisions" of the PSA and no "[implied] obligations shall be read into this Agreement against the Trustee."  *Id.* § 9.01.  Interpreting "shall enforce" to mean "unilaterally pursue litigation" would impermissibly imply a duty that is not expressly spelled out in the PSA.  *Fifth*, bringing litigation of any kind, including repurchase litigation, is a discretionary act—for example, one must evaluate potential claims and the

18

likelihood of success, select counsel, determine the proper forum, etc.—and, pursuant to the

PSAs, discretionary acts are not duties. *Id.* § 9.02(a)(viii). Because Plaintiffs' interpretation of

the PSAs is directly contradicted by their language, it must be rejected. *See Brad H. v. City of*

*New York*, 17 N.Y.3d 180, 185–86 (N.Y. 2011).

Summary judgment on Plaintiffs' claims related to R&W breaches should be entered in

favor of HSBC.

2.    **Undisputed course of conduct evidence contradicts Plaintiffs'
      litigation position about the meaning of "shall enforce."**

Even were the Court to find ambiguity in the PSAs, the Court should grant summary

judgment to HSBC on the basis of the undisputed course of conduct of the PSA parties,

including HSBC. After all, "[t]here is no surer way to find out [the intent of the parties] . . . than

to see what they have done."[19]

"The fundamental, neutral precept of contract interpretation is that agreements are

construed in accord with the *parties'* intent." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562,

569 (N.Y. 2002) (emphasis added). Plaintiffs are not parties to the PSAs. 56.1 ¶ 7. HSBC is the

only party to the contracts whose intent is in the record, and that evidence is undisputed.

HSBC's contemporaneous policies and procedures make clear that HSBC did not understand

"shall enforce" to mean unilaterally pursue repurchase litigation. 56.1 ¶ 75. There is no

evidence that HSBC unilaterally pursued repurchase litigation; on the contrary, HSBC insisted,

consistent with the PSA language, upon certificateholder direction and indemnity. 56.1 ¶ 76.

---

[19] *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 119 (2d Cir. 2010) (second
and third alterations in original); *see also Waverly Corp. v. City of New York*, 851 N.Y.S.2d 176,
179 (N.Y. App. Div. 2008) (considering course of conduct evidence).

19

Upon receiving a notice that a loan in a Trust allegedly breached R&Ws, HSBC's general practice was to forward that notice to other trust parties and follow up as necessary with the warranting party (typically the Sponsor) to request repurchase. 56.1 ¶ 77. If allegations of breach were not resolved voluntarily by the warranting party (or the noticing party dropping their allegations), then HSBC typically would send a notice to certificateholders to solicit their views on further direction. 56.1 ¶ 78. Such tasks are consistent with the limited duties of an RMBS trustee, while the unilateral initiation of expensive and discretionary repurchase litigation— which would impact certificateholders differently depending on the seniority of their notes—is not.

> **D.    Plaintiffs' R&W Claims are time-barred for 4 of the 7 disputed loans (the "Early Letter Loans").**

R&W claims related to the four Early Letter Loans are time-barred under New York's statute of limitations because HSBC purportedly received notice of R&W breach more than six years before Plaintiffs filed this lawsuit. Specifically, the undisputed evidence is that HSBC received letters regarding the four Early Letter Loans on or before Sept. 25, 2007. 56.1 ¶ 62. If those letters triggered HSBC's enforcement duties, any such duty arose at or near the time of receipt. *See supra*, Section III.A. Accordingly, the six-year limitations period expired by the end of 2013 or the beginning of 2014 at the latest, well before Plaintiffs filed their claims in this action in December 2014. *See id*.

## V.    HSBC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' EOD CLAIMS.

Under the PSAs for the three at-issue Trusts, HSBC assumed a "prudent person" standard of care only upon (1) the occurrence of a master servicer EOD, as defined in the PSAs, and (2)

HSBC's actual knowledge thereof.[20]  Because there is no evidence to establish an EOD or

HSBC's knowledge, HSBC is entitled to summary judgment on Plaintiffs' post-EOD claims.

Moreover, even were it triggered, the prudent person standard does not require the trustee to take

the actions that Plaintiffs assert.  Finally, Plaintiffs' post-EOD document-defect claims are, in

any event, time barred.

### A.      There is no evidence that a master servicer event of default occurred.

The PSAs for the at-issue Trusts provide that HSBC assumed a prudent-person standard

of care only upon a *master servicer* EOD.[21]  EODs are contractually-defined events that do not

arise by implication and cannot be imposed after-the-fact; they are significant events with

identifiable beginnings and ends.[22]  The PSAs set forth the precise conduct by the master servicer

that could constitute an EOD.  56.1 ¶¶ 81–85.  An EOD also requires (1) written notice of the

purported EOD to the breaching party (i.e., the master servicer), and (2) expiration of a cure

period (typically 30 or 60 days) without the breaching party curing the purported EOD.  56.1

¶¶ 84–85.[23]  Unless all procedural requirements are met, there is no EOD.

---

[20] *See* Order, *Phoenix Light SF Ltd., et al. v. HSBC Bank USA N.A.*, 14-cv-10101, ECF No. 302 ("Sampling Order"), at 8 ("Section 8.01 imposes a heightened, prudent person standard of care on the trustee, but only if the trustee has 'actual knowledge' or 'written notice' of an Event of Default.").

[21] *See* Underwood Ex. D App'x M (ACE 2005-AG1 PSA § 9.01) ("During the continuance of a Master Servicer Event of Default, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs."); *accord* Underwood Ex. D App'x M (FHLT 2006-C PSA § 8.01; NAA 2005-AR6).

[22] *See Argonaut P'ship v Bankers Tr. Co.*, 2001 WL 585519, at *2 (S.D.N.Y. May 30, 2001) ("It is reasonable for the Indenture to specify a particular single act . . . which must occur before [the trustee] is . . . obliged to exercise any remedies, rather than leaving questions of the timing . . . of its . . . obligation to act . . . to the uncertainties of later litigation . . . .").

[23] *Accord Putman High Yield Tr. v. Bank of N.Y.*, 776 N.Y.S.2d 796 (N.Y. App. Div. 2004) ("With regard to defendant's alleged failure to act prudently upon occurrence of a default, no

Plaintiffs have failed to establish any of the above EOD elements.  *First*, Plaintiffs cannot establish that there was a breach by the master servicer that would constitute an EOD.[24]  Notably, Plaintiffs failed to identify any such evidence in response to HSBC's interrogatory requesting that Plaintiffs state and describe each alleged Event of Default, 56.1 ¶ 86, and they also failed to proffer any expert testimony—from a servicing expert or otherwise—that master servicers' conduct gave rise to an EOD.[25]  Plaintiffs are stuck with this record and may not, in opposition to this Motion or at trial, use evidence that they failed to disclose in discovery.  *See, e.g.*, *Lujan v. Cabana Mgmt., Inc*., 284 F.R.D. 50, 68 (E.D.N.Y. 2012) (explaining "Rule 37(c) sanctions . . . may be predicated on a party's failure to amend its prior discovery responses").  HSBC likewise is unaware of any master servicer failure to perform that would give rise to an EOD.  56.1 ¶¶ 87-89.  Plaintiffs' EOD claims must be dismissed for lack of evidence.

---

such duty was ever triggered in the absence of written notification of default."); *see also* Sampling Order (ECF No. 302), at 8 ("An EoD under the PSAs generally occurs upon the master servicer's breach of its obligations, receipt of notice of the breach, and failure to cure during the requisite period.").

[24] Plaintiffs' *allegations* about how HSBC purportedly failed to address *servicer* misconduct—such as "charging excessive [or improper] fees," Am. Compl. Ex. I, at 1, 9, 19, 25, 27—fall outside the limited set of conduct that the PSAs include as potential grounds for a master-servicer EOD, *see, e.g.*, ACE 2005-AG1 PSA §8.01(b).  And Plaintiffs' invocation of government investigations and private litigation, *see, e.g.,* Am. Compl. ¶¶ 120, 136, and a laundry list of supposed misconduct relating to *other* transactions, Am. Compl. ¶¶ 146–50.; *id*. Ex. I, only underscores the lack of evidence of any master servicer misconduct *in connection with the Trusts* that could give rise to an EOD.  Plaintiffs' generalized allegations—which do not concern the master servicers' performance of their duties in the Trusts—clearly do not establish an EOD under the plain language of the PSAs.

[25] Plaintiffs also make general *allegations* that a master servicer EOD occurred based on false annual certifications of compliance, Am. Compl. ¶¶ 141–45, but even assuming that could give rise to an EOD, Plaintiffs have offered no *evidence* that any particular certification provided by the master servicer for the Trusts was false.  56.1 ¶ 87.

*Second*, there was no written notice to the master servicers.  Without that notice, no EOD

occurred.  *See Bakal v. U.S. Bank, NA*, 747 F. App'x 32, 35–36 (2d Cir. 2019) (dismissing EOD

claim against RMBS trustee for lack of written notice to master servicer of alleged EOD);

Acebedo Decl. ¶ 14 (HSBC has no knowledge of any written notice to the master servicer of any

failure to perform).  Plaintiffs may not rely on the prevention doctrine to excuse their failure of

proof.  Application of that doctrine—"which precludes a party from arguing that its performance

under a contract has not been triggered by a conditional precedent" that the party itself prevents

from being triggered—would require that HSBC took "active" steps to cause the lack of written

notice to the master servicer.  *Blackrock v. U.S. Bank Nat'l Ass'n*, 86 N.Y.S.3d 484, 485–86

(N.Y. App. Div. 2018).  That doctrine does not apply to trustees in the EOD context.  *Id.* at 485–

86 (rejecting application of doctrine against trustee on a similar record); *accord Fixed Income

Shares: Series M v. Citibank N.A.*, 69 N.Y.S.3d 288, 289–90 (N.Y. App. Div. 2018).  There is no

evidence that HSBC took any such action; Plaintiffs' prevention arguments impermissibly rely

exclusively on what they allege HSBC *should have* done.  *See Royal Park Invs. SA/NV v. HSBC

Bank USA N.A.*, 109 F. Supp. 3d 587, 605 (S.D.N.Y. 2015) ("*RP/HSBC I*").[26] Absent evidence

of notice to the master servicer (or at a minimum HSBC's knowledge), Plaintiffs EOD claims

fail.[27]

---

[26] Plaintiffs have failed even to demonstrate that HSBC had actual knowledge of an EOD.
Without such knowledge, it would be impossible for HSBC to provide notice, much less actively
prevent notice being provided to another party.
[27] The First Department's decisions in *Blackrock* and *Fixed Income Shares* post-date Judge
Scheindlin's motion-to-dismiss-stage holding in this case, *see RP/HSBC I*, 109 F. Supp. 3d at
605.  These later First Department rulings constitute binding precedent on this question of New
York law.  *See, e.g.*, *Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010).  Likewise, the Second
Circuit's decision in *Bakal*, 747 F. App'x at 35–36, did not apply the prevention doctrine.

**B.      There is no evidence that HSBC knew of any master servicer event of default.**

Under the PSAs, the trustee's prudent person duties are triggered only when "a

Responsible Officer of the Trustee . . . has actual knowledge thereof or unless written notice of

any event which is in fact [an EOD] is received by the Trustee at its Corporate Trustee Office."

56.1 ¶ 83.  Moreover, that notice and knowledge must be trust-specific.  *See id.* (requiring that

"such notice reference[] the Certificates, the Trust or this Agreement."); *see also RP/HSBC I*,

109 F. Supp. 3d at 606 ("Again, at trial or summary judgment, plaintiffs must produce proof of

actual knowledge with regard to [alleged Events of Default in] these trusts on the part of HSBC's

responsible officers.").

There is no evidence that HSBC received trust-specific notice of a master servicer EOD.

56.1 ¶ 89.  Nor is there evidence of HSBC's trust-specific actual knowledge of such EODs from

other sources.  To the extent Plaintiffs attempt to rely on the type of publicly-available non-

specific information presented in the complaint as actual knowledge of an EOD, *see* Am. Compl.

Ex. I, this effort fails to meet the standard that notice be trust-specific and be known to a

Responsible Officer of the Trustee.[28]  Moreover, because this generalized information by

definition does not give rise to a master servicer EOD, it also fails to establish HSBC's actual

knowledge.

**C.      HSBC satisfied any required duties.**

Finally, even if Plaintiffs could establish that a contractually-defined EOD occurred, and

that HSBC had actual knowledge of it, HSBC still would be entitled to summary judgment on

---

[28] 56.1 ¶¶ 83–89; MTD Op. 30 (stating "at trial or summary judgment, plaintiffs must produce proof of actual knowledge with regard to these trusts on the part of HSBC's responsible officers").

the post-EOD claims.  The "prudent person" standard does not require HSBC to take the actions

Plaintiffs allege HSBC should have taken.  "Even after [an] Event of Default, '[t]he scope of the

trustee's obligation . . . is still circumscribed by the indenture . . . .  The trustee is not required to

act beyond his contractually conferred rights and powers.'"  *RP/HSBC I*, 109 F. Supp. 3d at 597.

Even during an EOD, a trustee is not required to expend, advance, or risk its own funds, or incur

financial liability, without indemnity satisfactory to it.  56.1 ¶ 90.  This Court has held as much:

any "investigatory duty assumed by the trustee is still limited by the terms of the governing

agreements, which allow a trustee to refrain from expending or risking its own funds in

conducting an investigation without securing satisfactory indemnification."  *RP/HSBC*, 2017 WL

945099, at *9.  There is no evidence to contradict this Court's conclusion or to support Plaintiffs'

theory that a prudent person would have taken the unilateral actions they assert.

　　　　Moreover, there is no dispute that HSBC did not receive certificateholder direction to

undertake the actions Plaintiffs claim it should have.  56.1 ¶ 91.  And there is no evidence that, in

the absence of such direction, HSBC should have acted unilaterally.  *RP/HSBC*, 2017 WL

945099, at *9 ("[P]laintiffs have cited no evidence, such as industry standards or customs at the

time, showing that performing some kind of sampling review, identifying and investigating loan

breaches, and subsequently enforcing repurchase was 'what a prudent person would have done'

following an EOD.").

### D.    Plaintiffs' post-EOD document-defect claims are time barred under New York law.

　　　　Even if Plaintiffs were able to establish the occurrence of an EOD, and HSBC's

knowledge of the same, Plaintiffs' post-EOD document defect claims would be time barred for

the same reasons their claims are time-barred in the absence of an EOD.

The requirements of the PSAs regarding discovery and notice remain unchanged after an EOD.  *Beck v. Mfrs. Hanover Tr. Co.*, 632 N.Y.S.2d 520, 529 (1st Dep't 1995) ("The trustee must in the post-default context act prudently, but only in the exercise of those rights and powers granted in the indenture.").  As explained above, these claims accrue upon discovery or notice.  Thus, Plaintiffs' failure to present evidence of notice or discovery of an EOD during the period December 2008 to October 2011 (ACE 2005-AG1) is fatal even if they can establish an EOD.

In a futile attempt to overcome this failure of proof, it appears that Plaintiffs will attempt to argue, in effect, that an EOD conveniently arose on or about January 1, 2010, which would be within the narrow window of 1–2 years in which the warrantor's repurchase obligations had not expired but also within six years of filing this suit.  If an EOD did occur, Plaintiffs argue that it would give rise to an obligation on the part of HSBC to initiate a widespread review of thousands of loan files for uncured document defects.  Undeterred by this Court's previous pronouncement that HSBC had no such duty even under the prudent person standard,[29] Plaintiffs argue that had HSBC launched such an investigation, HSBC would have "discovered" the document defects underlying Plaintiff' claims, triggering HSBC's enforcement duties during the period between December 2008 and October 2011.  And had HSBC requested repurchase of thousands of loans in or around 2010, the warrantors would have voluntarily agreed as to each and every loan.  This "unbridled speculation" may have sufficed at the pleadings stage, but not at summary judgment.  *See Beck*, 632 N.Y.S.2d at 529 ("In any case, plaintiffs' unbridled speculation as to the consequences stemming from the Trustee's allowance of the assignments to

---

[29] *See RP/HSBC*, 2017 WL 945099, at *9 ("In addition, plaintiffs have not demonstrated that under Section 8.01's prudent person standard, HSBC was obligated to investigate unreported R&W breaches, such as by performing some kind of sampling review, and failed to do so.").

Mexrail is not sufficient to sustain the cited allegations as a basis for recovery.").

*First*, evidence of actual discovery or notice on a loan-by-loan basis is required to pursue such claims against trustees. *PL/BNYM*, 2017 WL 3973951, at *8 ("[B]y summary judgment . . . plaintiffs must present evidence that proves a specific breach of a representation or warranty . . . on an individualized loan-by-loan basis.") (internal quotation marks omitted). Plaintiffs cannot sidestep this bedrock evidentiary requirement by claiming that HSBC *should have* discovered the document defects during the relevant period. This would impermissibly transform the discovery or notice required by the PSAs into constructive notice. This Court previously acknowledged authority that the appropriate standard is "higher" than constructive notice. Sampling Order 5–6.

*Second*, there is no free-floating accrual rule—pre- or post-EOD—that permits Plaintiffs to pick the date of accrual to salvage document-defect claims. This Court previously foreclosed the argument that the Trusts create a "continuing" duty on the part of the Trustee with respect to document obligations: the three bellwether Trusts are not among those that this Court found to contain language that "plausibly gives rise to a continuing obligation with respect to document obligations." MTD Op. 36 n.120. An RMBS trustee must know there is an EOD in order to act prudently in response to one. And it must know precisely what the EOD is in order to determine how to act. This requires contemporaneous evidence that an EOD existed and the trustee had actual knowledge of it. Plaintiffs cannot cherry-pick an arbitrary date, years after the fact, and declare with the benefit of hindsight that an EOD occurred in order to manufacture theoretical claims that are timely. That is exactly what Plaintiffs attempt here.

## VI.   HSBC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR SERVICING DAMAGES.

Plaintiffs claim that with respect to two of the three Trusts, HSBC breached a purported

duty to supervise servicers, to improve their practices, and to recover damages from the servicers.  These claims fail for several reasons, including that each of the Trusts assigns the responsibility for supervising the servicer to a different transaction party.  In other words, the trustee does not service the loans, has no duty to supervise servicers, and therefore is not responsible for theoretical servicing damages.

### A.    HSBC is entitled to summary judgment as to any pre-EOD servicing damages.

Plaintiffs' theory of servicing damages relies exclusively on the trustee's imagined duties *after* the occurrence of an EOD.  56.1 ¶¶ 93–97.  Yet Plaintiffs also seek recovery for purported servicing losses that arose before EODs. 56.1 ¶ 96.

The Trustee is not responsible for servicing the loans in the trusts, does not supervise servicers, and has no responsibility for the acts or omissions of the Master Servicer or Servicers.  56.1 ¶¶ 80–85.  Plaintiffs identify no PSA provision, or other evidence to the contrary.  The PSAs in fact expressly assign to another transaction party the responsibility to oversee servicers, 56.1 ¶ 80.  None of the Governing Agreements obligates HSBC to monitor, oversee, or otherwise be responsible for Servicer conduct.  *See BlackRock Allocation Target Shares: Series S Portfolio v. U.S. Bank N.A.*, 2015 WL 2359319, at *2 (S.D.N.Y. May 18, 2015) ("[T]he trustee has no contractual obligation to monitor or oversee servicers.").  The allocation of this obligation to a different party is fatal to Plaintiffs' claims for servicing damages.  *Elliot Assocs. v. J. Henry Schroder Bank & Tr. Co*., 838 F.2d 66, 71 (2d Cir. 1988) (explaining that duties of a residential mortgage backed securities trustee "are strictly defined and limited to the [contractual] terms" governing the trust).  In fact, the PSAs for all the Trusts expressly state that the Trustee is not responsible for the acts or omissions of the servicers.  Underwood Decl. Ex. D Appx. J.

28

Accordingly, the Court should enter summary judgment in favor of HSBC as to servicing-related damages to the extent that such damages pre-date Plaintiffs' proof, on a trust- and loan-specific basis, of the occurrence of a Master Servicer EOD, and HSBC's "actual knowledge" or receipt of "written notice" of the same.

### B.   Plaintiffs' post-EOD servicing claims fail.

As discussed above, the Plaintiffs fail to offer any trust specific evidence of an EOD or knowledge of the same by HSBC.  But even if this were not the case, Plaintiffs' servicing damages claims would fail.  *First*, the PSAs do not change the trustee's duties with respect to servicers after an EOD.  During the pendency of a master servicer EOD, the trustee must exercise its rights and obligations under the PSAs as a prudent person would.  56.1 ¶ 94.  But the occurrence of an EOD does not add to those rights and obligations vis-à-vis the other transaction parties.  Plaintiffs' servicing damages claims are based upon the false premise that post-EOD, the trustee was obligated to begin supervising servicers and demand "they improve servicing performance, and reimburse the at-issue Trust for prior failures . . . ." 56.1 ¶ 97.  That duty does not exist for the trustee under the PSAs. 56.1 ¶¶ 80–85.

Plaintiffs offer no evidence that the PSA imposes such an obligation (or even such a right), either before or after an EOD.  Even Plaintiffs' expert acknowledges that she *assumed* "HSBC was required to address breaches by the Servicers when defaults or Events of Default occurred in the at-issue Trusts."  56.1 ¶ 95.  That faulty assumption is fatal.

*Second*, Plaintiffs have failed to tie their sweeping theory of servicing damages to evidence on a loan- or trust-specific basis showing that that a servicer actually breached PSA obligations with regard to specific loans.  Plaintiffs' experts criticize the overall performance of the loans, 56.1 ¶ 97, but servicers do not guarantee loan performance and neither does the trustee,

29

56.1 ¶ 4.  Plaintiffs' reliance on government investigations and private litigation unrelated to the Trusts is equally unavailing because none of that information comprises trust- or loan-specific breaches.

      **C.**    **There is no evidence of servicing damages in NAA 2006-AR6.**

      Plaintiffs' damages expert computes alleged "servicing" damages only as to ACE 2005-AG1 and FHLT 2006-C.  56.1 ¶¶ 93–94.  Plaintiffs have presented no evidence of servicing damages in NAA 2006-AR6; HSBC is entitled to summary judgment on any servicing damages in this trust.

**VII.**    **THERE IS NO EVIDENCE OF BAD FAITH.**

      Even if Plaintiffs could show that HSBC did not act in accordance with the governing agreements (they cannot), the claims would still fail because HSBC cannot be "liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized."  *See, e.g.*, ACE 2005-AG1 PSA § 9.02(a)(iv).  Plaintiffs must present evidence not just that HSBC breached its duties, but that its interpretation of the agreements was so unreasonable and dishonest as to constitute bad faith.  *See L-7 Designs, Inc. v. Old Navy, LLC,* 964 F. Supp. 2d 299, 307–08 (S.D.N.Y. 2013) ("good faith requires 'honesty in fact'").  There is no such evidence here.  At the very least, HSBC's conduct reflected a reasonable reading of the agreements, even if the Court ultimately concludes it was not the only one.  If the meaning of terms like "discovery" or "enforce" are ambiguous, then HSBC's conduct was reasonable as a matter of law.  *See, e.g., Nouveau Elevator Indus. v. Cont'l Cas. Ins. Co.*, 2006 WL 1720429, at *6, *8 (E.D.N.Y. June 21, 2006) (summary judgment on bad-faith claim because defendant's reading of "ambiguous" term was "reasonable").  The same conclusion is fatal to Plaintiffs' claim for breach of the covenant of good faith and fair dealing, which also should be dismissed

as duplicative of Plaintiffs' breach of contract claims.  *See Commerzbank AG v. HSBC Bank N.A.*

("*Commerzbank/HSBC*"), 2016 WL 3211978, at *3 (S.D.N.Y. June 8, 2016) (dismissing same).

## VIII.   THERE ARE NO VALID CLAIMS UNDER THE TRUST INDENTURE ACT OR THE STREIT ACT.

As this Court previously recognized in dismissing Plaintiffs' claims under the Trust

Indenture Act with regard to PSA trusts, "the Second Circuit has held that the TIA does not

apply to PSA trusts."  MTD Op. 43 (citing *Ret. Bd. of Policemen's Annuity & Benefit Fund of*

*Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 166–70 (2d Cir. 2014)).  It is undisputed that each of

the three Trusts are PSA trusts, *see* 56.1  ¶ 3, and HSBC is therefore entitled to summary

judgment as to all TIA claims.

The Streit Act claims also fail.  This Court dismissed those claims arising under Section

124 of the Streit Act.  MTD Op. 41.  Plaintiffs' remaining claims under Section 126 of the Streit

Act were allowed to proceed past the motion to dismiss stage, but more recent caselaw has

established a "consensus of courts in this District" that Section 126 "'requires only that trust

instruments include certain provisions' without imposing any affirmative duties on trustees."[30]

Plaintiffs do not and cannot allege that the PSAs of any of the three Trusts lack the required

provisions, and the remaining Streit Act claims therefore fail.

## IX.   PLAINTIFFS HAVE NO VALID FIDUCIARY DUTY CLAIMS.

This Court previously held that HSBC was not in a fiduciary relationship with Plaintiffs

before an EOD and dismissed the Plaintiffs' pre-EOD fiduciary duty claims on this basis.  MTD

---

[30] *Ambac Assurance Corp. v. U.S. Bank N.A.*, 328 F. Supp. 3d 141, 165 (S.D.N.Y. 2018) (quoting *Commerzbank/HSBC*, 2016 WL 3211978, at *2); *see also BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, N.A.*, 247 F. Supp. 3d 377, 404–05 (S.D.N.Y. 2017) (collecting cases).

31

Op. 36–37.  Plaintiffs' fiduciary duty claims survived only "[t]o the extent that plaintiffs plead a post-EOD breach of HSBC's duty of loyalty," and only because it was "premature" to dismiss such post-EOD fiduciary duty claims. MTD Op. 36, 40.

 HSBC is entitled to summary judgment on Plaintiffs' post-EOD fiduciary duty claims. *First*, there is no evidence of the existence of an EOD in any Trust such that Plaintiffs have failed to meet their burden of establishing that fiduciary duties arose in the first instance. *Second*, even if Plaintiffs could establish an EOD, these claims fail because they are duplicative of Plaintiffs' breach-of-contract claims:  Plaintiffs allege the same injury, the same predicate conduct, and the same damages for both claims.  *See* Am. Compl. ¶¶ 185–88; *see also Dormitory Auth. of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704, 711–12 (N.Y. 2018).  *Third*, Plaintiffs have failed to present evidence of any breach of the duty of loyalty or conflict of interest.[31]  This Court specifically identified the sort of evidence that might survive summary judgment, MTD Op. 40, but Plaintiffs have failed to present any such evidence with regard to the parties to the Trust PSAs, 56.1 ¶¶ 99–100.  The Court made clear that "[b]ald assertions of conflict" are insufficient, and the existence of a conflict of interest cannot be inferred solely from, for example, "a relationship between an issuer and an indenture trustee that is mutually beneficial and increasingly lucrative," MTD Op. 10–11 (internal quotation marks and citation omitted), or "[a] fee arrangement expressly authorized by the trust's governing agreements," MTD Op. 11.  HSBC is entitled to summary judgment on all of Plaintiffs' fiduciary duty claims.

 Finally, the claims are barred by the economic loss doctrine.  *See Triaxx Prime CDO*

---

[31] *See Fixed Income Shares: Series M v. Citibank*, 314 F. Supp. 3d 552, 562 (S.D.N.Y. 2018) (dismissing conflict of interest claims at the summary judgment stage).

*2006-1, Ltd. v. BNYM*, 2018 WL 1417850, at *7 (S.D.N.Y. Mar. 8, 2018) (dismissing conflicts of interest claims at the motion to dismiss stage), *aff'd*, 741 F. App'x 857 (2d Cir. 2018).

## X.     PLAINTIFFS ARE NOT ENTITLED TO THE DAMAGES THEY SEEK.

### A.     Phoenix Light has failed to establish that it suffered any damages.

HSBC is entitled to summary judgment on all of Phoenix Light's claims because Phoenix Light cannot meet its burden to establish it suffered damages.  At the summary judgment stage, Plaintiffs must show "some evidence of the *fact* of damages (if not more) to create a triable issue on that element of their claim."[32]  Phoenix Light has not suffered damages. 56.1 ¶¶ 101–103. Any losses experienced by the Certificates have instead been borne by certain German entities. 56.1 ¶¶ 101–103.  Phoenix Light has failed to provide evidence of any losses that have not been fully borne by the German entities.  56.1 ¶¶ 101–103.  Phoenix Light cannot show that *it* has suffered any losses, and its claims fail as a matter of law.  *In re GM*, 407 F. Supp. 3d at 231–32.

### B.     The PSAs for ACE 2005-AG1 and NAA 2006-AR6 bar the damages sought by Plaintiffs.

This Court previously denied HSBC's motion to strike consequential damages from Plaintiffs' complaint.  MTD Op. 49–50.  The Court stated that at "[that] stage in this litigation," it could not conclude "as a matter of law that losses sustained by the trust assets qualify as consequential damages."  MTD Op. 50.  On summary judgment, however, the evidence now makes clear that the investment losses Plaintiffs seek are consequential damages that "go beyond

---

[32] *In re GM Ignition Switch Litig.*, 407 F. Supp. 3d 212, 231–32 (S.D.N.Y.), *reconsideration denied*, 427 F. Supp. 3d 374 (S.D.N.Y. 2019); *Creative Transaction Corp. v. Monroe Allen Publishers, Inc.*, 2004 WL 60291, at *5 (S.D.N.Y. Jan. 12, 2004) (granting summary judgment to defendants where plaintiffs failed to meet their burden to show "any evidentiary support for their claim for lost profits").

the value of the performance promised" with respect to two of the Trusts (ACE 2005-AG1 and

NAA 2006-AR6).

Under New York law, "courts must honor contractual provisions that limit liability or

damages." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*,

30 N.Y.3d 572, 581 (N.Y. 2017).  Contracting parties are "free to . . . prohibit[] consequential

damages." *Optima Media Grp. v. Bloomberg L.P.*, 2018 WL 1587074, at *7 (S.D.N.Y. Mar. 28,

2018).  The PSAs for two trusts provide that the trustee is not liable for "special, indirect or

consequential loss or damage of any kind whatsoever," including "lost profits."  56.1 ¶ 104.  *All*

of the damages Plaintiffs seek—namely, investment losses—fall into these categories.

Consequential damages are defined in contradistinction to "general" damages.  "General

damages seek to compensate the plaintiff for the value of the very performance promised, often

determined by the market value of the good or service to be provided." *Carco Grp. v.

Maconachy*, 383 F. App'x 73, 75 (2d Cir. 2010).  Consequential damages, by contrast, "seek to

compensate a plaintiff for additional losses (other than the value of the promised performance)

that are incurred as a result of the defendant's breach."[33]

For service contracts, "general damages refer to damages based upon the value of

performance, not on the value of the consequences of that performance, or the failure to

perform."[34]  This distinction applies even where "[t]he purpose of the [service] was precisely to"

---

[33] *Schonfeld v. Hilliard*, 218 F.3d 164, 176 (2d Cir. 2000).  "[C]onsequential damages measure
. . . not the very thing the plaintiff was entitled to but [the] income it can produce or losses it can
avoid." *MVP Health Plan, Inc. v. OptumInsight, Inc.*, 2017 WL 3669558, at *15 (N.D.N.Y. Aug.
24, 2017), *aff'd*, 765 F. App'x 615 (2d Cir. 2019) (internal quotation marks omitted).
[34] *MMS USA Holdings v. PricewaterhouseCoopers LLP*, 2013 WL 1154932, at *5 (N.Y. Sup. Ct.
Mar. 19, 2013).

prevent the adverse consequence.  *Int'l Ore & Fertilizer Corp. v. SGS Control Servs.*, 38 F.3d 1279, 1285 (2d Cir. 1994).  Thus, while payments to a service-provider defendant "are undoubtedly general damages," the losses from the defendant's failure to perform are not.  *N. Indus. Holdings, LLC v. E. Env't Grp.*, 2016 WL 8541049, at *5, *7 (N.D.N.Y. Feb. 23, 2016).  Courts regularly apply this distinction under New York law.[35]

Plaintiffs and their damages expert, Dr. Joseph Mason, define damages as the "remaining scheduled principal balance on the loans plus accrued interest from the date of the last payment" and "damages from lost certificate value" had [HSBC] enforced repurchase obligations of Sellers.  56.1 ¶ 105.  Plaintiffs also seek "servicing damages" for ACE 2005-AG1 and FHLT 2006-C, consisting of lost principal and interest payments (certificate value) due to the alleged failure of HSBC to take "reasonable steps" to ensure the loans were "prudently serviced."  56.1 ¶ 106.

In sum, Plaintiffs contend that *if* HSBC had performed its contractual obligations, the returns on the Certificates would have improved because loans with alleged document defects or R&W breaches *would have* been repurchased, or loan servicing would have improved returns,

---

[35] *See Carco Grp. v. Maconachy*, 718 F.3d 72, 81–82 (2d Cir. 2013) (business losses caused by breach of employment agreement were consequential damages, whereas employee's salary constituted general damages); *MVP Health Plan,* 2017 WL 3669558, at *15–17 ("lost income" due to faulty actuarial services was consequential damages, while "the contract price for [the actuary's] services constitute[d] general damages"); *N. Indus. Holdings*, 2016 WL 8541049, at *1, *5–7 (cross-contamination costs incurred due to inspection company's failure to identify asbestos-containing material were consequential damages, while payments made to company were general damages); *FDIC v. Drysdale*, 2013 WL 5695723, at *4 (E.D.N.Y. Nov. 7. 2013) (loss on mortgage loan incurred due to closing attorney's error was consequential damages); *MMS USA Holdings*, 2013 WL 1154932, at *4–5 (taxes owed due to faulty tax advice were consequential damages, whereas the "fees paid for the allegedly improper service" were general damages).

which *would have* resulted in Plaintiffs receiving additional investment income.  All Plaintiffs'

damages calculations are based on multiple hypothetical, "but-for" scenarios involving

speculation about potential actions taken not only by HSBC, but also by other PSA parties, and

even courts.  Plaintiffs' alleged losses are several "step[s] removed from the naked performance

promised by [HSBC]."  *Schonfeld*, 218 F.3d at 177.  They do not constitute "damages based upon

the value of performance," but rather "the value of the consequences of that performance."  *MMS*

*USA Holdings*, 2013 WL 1154932, at *5.  As such, for the ACE 2005-AG1 and NAA 2006-AR6,

Plaintiffs' alleged damages are barred.

### C.    Plaintiffs have no repurchase damages where the repurchase price is zero.

Under the PSAs for the trusts at issue, when a warranting party repurchases a loan, it does

so at a contractually-defined repurchase price.  In ACE 2005-AG1, the PSA defines the Stated

Principal Balance (the main component of the repurchase price) for liquidated loans as zero.

56.1 ¶¶ 107–109.  Therefore, Plaintiffs cannot recover these amounts.  *See Bank of N.Y. Mellon*

*v. WMC Mortg., LLC*, 2015 WL 13867151, at *5 (S.D.N.Y. Aug. 18, 2015).

Judge Cote analyzed this scenario in *Bank of New York Mellon v. WMC Mortgage, LLC*.

She began with the fact that, as here, "[t]he parties are sophisticated commercial entities who

negotiated a complex agreement . . . whose language was drafted with precision," and therefore

"[l]ooking for an appropriate measure of damages outside those contracts should be a last

resort."  *Id*. at *5.  She reasoned that "[b]ecause the PSA's Purchase Price formula may be

applied in the situation here -- where loans have been liquidated -- that formula, to which the

parties explicitly agreed, guides any calculation of damages."  *Id*. at *6.  The same reasoning

applies here and requires summary judgment be granted to HSBC for the principal balance of

loans in ACE 2005-AG1 that had been liquidated as of the date repurchase would have occurred.

36

Contrary to express terms of the 2005-AG1 PSA, Plaintiffs' damages expert Dr. Mason assumes a warrantor would repurchase liquidated loans for the principal balance remaining at the time of the liquidation.  56.1 ¶¶ 110–111.  That theory artificially inflates what would flow to the trust under the plain terms of the PSA.  56.1  ¶¶ 107–111.

### D.    Plaintiffs have no competent evidence of warrantor ability to pay.

Plaintiffs contend that the failure to cause loans to be repurchased diminished cash to the trusts, and to the certificateholders.  To establish damages, Plaintiffs must prove that the warrantors were solvent and could have made good on their hypothetical repurchase obligations.[36]  With respect to at least one trust, Plaintiffs cannot meet this burden.

For FHLT 2006-C, Plaintiffs' damages expert has calculated Plaintiffs' damages as between $4.0 and $4.65 million.  56.1 ¶ 112.  Taking into account the trust's distribution structure, this would require total payments by Fremont Investment & Loan ("FIL"), the sponsor, of $129 million as of July 2010 to resolve repurchase claims.  56.1 ¶¶ 114–115.  Dr. Mason's damages calculation incorrectly assumes, without evidence, that FIL would have had the ability to make a payment of $129 million in July 2010.  56.1 ¶ 116.  Not so.  As of 2007, FIL's liabilities were more than $10.67 billion against a cash position of just over $1.0 billion.  56.1 ¶ 121.  Shortly thereafter, FIL's affiliate Fremont General Corporation ("FGC") entered Chapter 11 bankruptcy proceedings and, on June 11, 2010, FIL merged into FGC as part of the bankruptcy reorganization.  56.1 ¶¶ 117, 122.  The new entity, Signature Group Holdings, Inc.,

---

[36] *See, e,g.*, *RP/DB*, 2018 WL 4682220, at *6–7, n.5 (S.D.N.Y. Sept. 28, 2018); *Royal Park Invs. SA/NV v. U.S. Bank N.A.*, 2018 WL 3350323, at *5 (S.D.N.Y. July 9, 2018) (*"RP/USB"*) ("[W]ith respect to each breaching loan, Royal Park would need to establish which entity originated the loan and whether that entity was solvent at the time that U.S. Bank would have demanded that the originator repurchase the loan."), *aff'd*, 349 F. Supp. 3d 282 (S.D.N.Y. 2018).

also lacked capacity to pay the amounts Dr. Mason assumes. *See* 56.1 ¶¶ 125–128.  FIL's actual

repurchase practices confirm that FIL could pay at best pennies on the dollar.  56.1 ¶¶ 123–124.

Had HSBC pursued repurchase claims in the FHLT 2006-C trust, it would have merely incurred

expenses that would have outweighed any benefit to the Plaintiffs.  56.1 ¶¶ 112–130.

Dr. Mason confirmed that he is not offering any opinion on FIL's ability to pay.  56.1

¶ 130.  Plaintiffs are left with no evidence on this issue, for which they have the burden, *see*

*RP/USB*, 2018 WL 3350323, at *5.  There is no genuine dispute of material fact, and HSBC is

therefore entitled to summary judgment on the issue of inability to pay on the part of FIL and

Signature Group Holdings, Inc.

## CONCLUSION

HSBC's summary judgment motion should be granted.

Dated: June 15, 2021                              Respectfully submitted,

                          By:        /s/ *Kevin M. Hodges*

                                     George A. Borden
                                     Kevin M. Hodges (*pro hac vice*)
                                     Andrew W. Rudge (*pro hac vice*)
                                     Edward C. Reddington (*pro hac vice*)
                                     WILLIAMS & CONNOLLY LLP
                                     725 Twelfth Street, N.W.
                                     Washington, DC 20005
                                     Telephone: (202) 434-5000
                                     Facsimile: (202) 434-5029
                                     gborden@wc.com
                                     khodges@wc.com
                                     arudge@wc.com
                                     ereddington@wc.com


                                     *Counsel for HSBC Bank USA, N.A.*