UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
PHOENIX LIGHT SF LIMITED, et al.,                           :
                                       Plaintiffs,   :       14 Civ. 10101 (LGS)
                                                            :
           -against-                                    :       OPINION AND ORDER
                                                            :
HSBC BANK USA, NATIONAL                                     :
ASSOCIATION,                                                :
                                       Defendant.  :
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       For purposes of these motions, Plaintiffs are three issuers of collateralized debt obligations ("CDOs") that hold certain Residential Mortgage Backed Securities ("RMBS") issued by three RMBS Trusts (the "RMBS Trusts") chosen through a bellwether process. Plaintiffs are C-Bass CBO XVII Ltd. ("C-Bass"), Kleros Preferred Funding V PLC ("Kleros") and Phoenix Light SF Ltd. ("Phoenix Light"). Defendant HSBC Bank USA, National Association ("HBSC," "Defendant" or the "RMBS Trustee") is the trustee of the RMBS Trusts. The Amended Complaint alleges breach of contract, breach of fiduciary duty, violations of the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa, *et seq.* (the "TIA"), violations of New York's Streit Act, N.Y. Real Property Law § 124, *et seq.*, negligence, and breach of the covenant of good faith against HSBC for its role as the RMBS Trustee.[1] Defendants moved for summary

---

[1] Plaintiffs' negligence, negligent misrepresentation and TIA § 315(a) claims were dismissed. *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 614 (S.D.N.Y. 2015). Plaintiffs repleaded the negligence claim. Plaintiffs do not specifically reargue the negligence claim, presumably because it is duplicative of the fiduciary duty claims. In any event, the negligence claim is dismissed for the reasons below and because Plaintiffs lack standing as an RMBS certificate holder.

judgment, and Plaintiffs cross-moved for partial summary judgment. For the reasons below, Defendant is granted summary judgment on all claims, and Plaintiffs' motion is denied as moot.

I.   BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and other submissions on these motions. The facts are either undisputed or based on evidence in the record drawing all reasonable inferences in favor of the non-moving party. Familiarity with the background facts is assumed.

   a.   RMBS Trusts and Certificates

Plaintiffs are CDO issuers that held and resecuritized certain RMBS certificates issued by the RMBS Trusts. Defendant HSBC serves as the trustee of the RMBS Trusts. The Pooling and Servicing Agreement (the "PSA") governs the RMBS Trusts and delineates the duties of relevant parties to the RMBS Trusts, including those of the RMBS Trustee.

The parties have completed discovery concerning three RMBS Trusts and the following RMBS certificates issued by the three Trusts: (1) ACE Securities Corp. Home Equity Loan Trust, Series 2005-AG1 Asset Backed Pass-Through Certificates ("ACE 2005-AG1"), (2) Fremont Home Loan Trust 2006-C ("FHLT 2006-C") and (3) Nomura Asset Acceptance Corporation Mortgage Pass-Through Certificates, Series 2005-AR6 ("NAA 2005-AR6") (collectively, the "Certificates"). The three RMBS Trusts were selected through a bellwether process described below. Plaintiffs contend that Defendant breached the PSA and other duties as a trustee to the owners of the Certificates.

   b.   Formation of Plaintiffs and CDOs

Plaintiffs sue in connection with the three bellwether RMBS Trusts. Plaintiffs C-BASS and Kleros are CDO issuers that were created as special purpose vehicles to acquire securitized

assets.  Plaintiff Phoenix Light was created as a special purpose vehicle by a German Bank called WestLB to segregate assets off of WestLB's books.  C-BASS and Kleros acquired Certificates in particular tranches of the ACE 2005-AG1 and FHLT 2006-C trusts.  Plaintiff Phoenix Light acquired Certificates in particular tranches of FHLT 2006-C and NAA 2005-AR6 from WestLB.

Plaintiffs pooled and resecuritized various securitized assets, including the Certificates.  Plaintiffs issued CDOs in the form of notes, which were secured in part by the Certificates.  In that process, Plaintiffs assigned their rights in the Certificates to Plaintiffs' respective CDO trustees.  C-BASS and Kleros entered into an indenture appointing Bank of New York Trust Company, National Association ("BNY") and Deutsche Bank Trust Company Americas ("DB") as CDO trustees, respectively, and transferring to the trustees "all of its right, title and interest" in the Certificates they had acquired.  Under a trust agreement, Phoenix Light similarly transferred "all its present and future, actual and contingent claims and rights" in the Certificates it had acquired to DB as CDO trustee.  In an Amended and Restated U.S. Security Agreement, Phoenix Light later granted to DB "all of the Issuer's right, title, and interest in and to" collateral assets.  The CDO trustees are not parties to this lawsuit.

### c. The Reassignment

After commencing this action, Plaintiffs requested each CDO trustee to reassign its litigation rights to Phoenix Light.  DB and BNY consented.  In June 2015, DB reassigned its interests in Klero's Certificates and Phoenix Light's Certificates to Phoenix Light, and BNY reassigned its interest in C-BASS Certificates to C-BASS (the "Reassignment").  The Reassignment encompassed five lawsuits brought by Phoenix Light and others against five different defendants, respectively, including HSBC.  The lawsuits include this litigation

("*Phoenix Light v. HSBC*") and *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14 Civ. 10116 ("*Phoenix Light v. USB*").

### d. Motion to Dismiss and Subsequent Litigation

The eight plaintiffs in this action sued HSBC in its role as the RMBS Trustee for twenty-nine RMBS Trusts. The action was initially coordinated with five similar suits by different plaintiffs against HSBC, in which a limited number of trusts were selected to proceed through discovery, motions, and trial (if necessary), as part of a bellwether process, with actions on the remaining trusts deferred.

On June 15, 2015, Judge Scheindlin denied in part Defendant's motion to dismiss. She also granted the motion in part, dismissing the claims of negligence, negligent misrepresentation and TIA § 315(a). At the motion to dismiss stage, Judge Scheindlin discussed the issue of standing only briefly in an opinion that included two of the related cases with HSBC as the defendant. *See Royal Park Invs. SA/NV*, 109 F. Supp. 3d at 607. The opinion found that the PSA allowed only the contracting parties and third-party beneficiaries, like "certificateholders" and "noteholders," to enforce the agreement. *Id*. Because Plaintiffs are beneficial "owners" of a certificate or note -- not "holders" -- the Court found that Plaintiffs did not have standing to sue based on the PSA. *Id*. Instead of dismissing the claims based on standing, the Court ordered Plaintiffs to cure the deficiency by "receiv[ing] authorization to sue from the registered Holder." *Id*. (citing *Applestein v. Province of Buenos Aires*, 415 F.3d 242 (2d Cir. 2005)). Having been reassigned the interest in the Certificates, Plaintiffs amended the complaint to reflect the Reassignment and the Court's dismissal of certain claims.

In 2019, four of the related actions against HSBC, including this action, were referred to Magistrate Judge Netburn for general pre-trial supervision. Judge Netburn established the

bellwether process, which resulted in the selection of the three RMBS Trusts and the three Plaintiffs at issue on this motion.

## II. DISCUSSION

Plaintiffs lack standing to bring this action based either on the doctrine of collateral estoppel or a de novo analysis of standing.

### a. Collateral Estoppel

Collateral estoppel, which is also known as issue preclusion, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to a prior judgment.'" *Cayuga Nation v. Tanner*, 6 F.4th 361, 374 (2d Cir. 2021) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). "[F]ederal diversity judgments [such as the one in *Phoenix Light v. USB*,] should be accorded the same preclusive effect that would be applied by state courts in the state in which the federal diversity court sits." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021), *certified question on other grounds accepted,* 166 N.E.3d 1053 (N.Y. 2021), and *certified question answered,* 183 N.E.3d 1885 (N.Y. 2021) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08 (2001)). Because *Phoenix Light v. USB* was litigated in this court, New York law governs the preclusive effect of that decision.

"Under New York law, collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the . . . causes of action are the same." *Simmons v. Trans Express*, 170 N.E.3d 733, 737 (N.Y. 2021) (internal quotation marks omitted). "The doctrine applies only where (1) the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action," and (2) the party who is being

estopped "had a full and fair opportunity to litigate the issue in the earlier action." *Id*. (internal quotation marks omitted). The test is not mechanical, and "the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results." *Id*. (internal quotation marks omitted).

Plaintiffs are estopped from relitigating the issue of standing based on the summary judgment decision in *Phoenix Light v. USB,* which held that plaintiffs lacked standing and granted summary judgment to defendants. *See Phoenix Light v. USB*, 2020 WL 1285783, at *3 (S.D.N.Y. Mar. 18, 2020) ("*Phoenix Light v. USB I*"). Plaintiffs here -- Phoenix Light, Kleros and C-Bass -- were also plaintiffs in *Phoenix Light v. USB*.[2] Plaintiffs brought substantially the same claims against USB for its role as trustee for an RMBS trust as they bring here against HSBC. The issue that was raised and decided in *Phoenix Light v. USB I* is identical to the issue raised here -- whether the reassignment of rights from the CDO trustees to Plaintiffs was valid and conferred standing on Plaintiffs, or whether the reassignment was champertous and therefore invalid, leaving Plaintiffs without standing. *See id*.

In *Phoenix Light v. USB I,* Judge Broderick found there was no material question of fact that the assignments of claims in that action from the indenture trustees to the eight plaintiffs were executed "for the sole purpose of pursing [the *Phoenix Light v. USB* litigation], and for no other reason." *Id.* at *12. Judge Broderick consequently found that the assignments were void

---

[2] The same eight plaintiffs commenced *Phoenix Light v. USB* and this action. Six of the eight plaintiffs, including Phoenix Light, Kleros and C-Bass are identical in both actions. The two Plaintiffs that differ in *Phoenix Light v. USB I* are Blue Heron Funding VI Ltd. and Blue Heron Funding VII Ltd. versus Blue Heron Funding II Ltd. and Blue Heron Funding V Ltd. in this action.

as champertous under New York law, and that Plaintiffs therefore lacked Article III and prudential standing. *Id.* Judge Broderick also observed that the plaintiffs could not rely on the so-called *Love Funding* exception to the statutory prohibition on champerty because they lacked any "preexisting proprietary interest" in the certificates, having executed a complete transfer of their interests in the certificates to the indenture trustees. *Id*. at *13-15 (citing *Tr. for the Certificate Holders of Merrill Lynch Mortg. Invs. Inc. v. Love Funding Corp.*, 918 N.E.2d 889, 896 (2009)).

On appeal, the Second Circuit affirmed. *See Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*, No. 20 Civ. 1312, 2021 WL 4515256, at *3 (2d Cir. Oct. 4, 2021) (summary order) ("*Phoenix Light v. USB II*"), *cert. denied,* 142 S. Ct. 1371, 2022 WL 827912 (2022). The Second Circuit assumed Article III standing and held, "[b]ased on the factual findings of the District Court," that the assignments were champertous under New York law and that the plaintiffs lacked prudential standing. *Id.* at *1. The Second Circuit also affirmed Judge Broderick's finding that the plaintiffs did not have a "preexisting proprietary interest" in the certificates and could not rely on the *Love Funding* exception. *Id.* at *2. The court noted that "Plaintiffs run up against both the particular language of their CDO indentures and the law of our Circuit, which support the conclusions of [the District Court] that a grant of 'all . . . right, title, and interest" to an indenture trustee is a 'complete transfer.'" *Id*. (quoting *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 253 (2d Cir. 2018)).

The issue presented here -- whether the assignments were champertous and invalid -- is identical to the issue decided in *Phoenix Light v. USB I* and affirmed in *Phoenix Light v. USB II*. And there is no issue of fact that the assignments were the same in both cases. In both cases, plaintiffs transferred their RMBS certificates to the CDO trustees and conveyed to them all

7

"right, title and interest" in the certificates. *See Phoenix Light v. USB II*, 2021 WL 4515256, at *1. The District Court in both cases required plaintiffs to cure their lack of standing at the motion to dismiss stage. *See Phoenix Light v. USB*, 2015 WL 2359358, at *1; *Royal Park Invs. SA/NV*, 109 F. Supp. 3d at 607. The CDO trustees subsequently assigned the right to pursue these claims back to the Plaintiffs. The assignments at issue are governed by the same language, granting all "right, title and interest" to CDO trustees. It is also undisputed that the Reassignments that Plaintiffs rely on here to assert their claims are the same assignments that Judge Broderick and the Court of Appeals found to be invalid and champertous.

Plaintiffs have had a full and fair opportunity to litigate the issue of standing and champerty. No competing policy considerations counsel in favor of litigating these issues again. At least three judges in this District have adjudicated and dismissed plaintiffs' lawsuits based on Judge Broderick's and the Court of Appeals' decisions. *See, e.g.*, *Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, No. 15 Civ. 10033, 2021 WL 7082193 (S.D.N.Y. Dec. 6, 2021) (Report & Recommendation); *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14 Civ. 10104, 2022 WL 92213 (S.D.N.Y. Jan. 7, 2022); *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co.*, No. 14 Civ. 10103, 2022 WL 384748 (S.D.N.Y. Feb. 8, 2022). Collateral estoppel bars Plaintiffs from relitigating the issue of standing after it was fully litigated in *Phoenix Light v. USB I* and *II*.

    b. Standing

Even if the issue of standing is analyzed de novo without the doctrine of collateral estoppel, Plaintiffs lack standing. All of Plaintiffs' claims here are based on their status as holders of RMBS Certificates. Plaintiffs claim that, even though they had transferred their right to litigate to the CDO trustees, the rights were reassigned back to Plaintiffs. For the reasons

below, the Reassignment of the litigation right was champertous and invalid, and therefore, Plaintiffs do not have standing to bring their claims.

### 1. Constitutional and Prudential Standing

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44, 48 (2d Cir. 2014) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004)); *accord Phoenix Light v. USB I*, 2020 WL 1285783, at *9.

Constitutional standing asks "whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted); *accord In re Clinton Nurseries, Inc.*, 998 F.3d 56, 63 (2d Cir. 2021). "[T]he plaintiff [must have] alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf." *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2018) (quoting *Warth*, 422 U.S. at 498-99); *Stagg, P.C. v. U.S. Dep't of State*, 983 F.3d 589, 601 (2d Cir. 2020). A plaintiff claiming such a stake must establish, "(1) injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019) (internal quotation marks omitted). When a plaintiff has an interest in the outcome of a suit but no legally protected right to vindicate, the plaintiff may be assigned the right at issue and "stand in the place of the injured

party." *Cortlandt St. Recovery Corp.*, 790 F.3d at 418 (quoting *W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d at 107); *see also Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008) ("Lawsuits by assignees ... are cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." (internal quotation marks omitted)).

"Unlike constitutional standing, which focuses on whether a litigant sustained a cognizable injury-in-fact, '[t]he prudential standing rule … bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *United States v. Suarez*, 791 F.3d 363, 366 (2d Cir. 2015) (alterations in original) (quoting *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014)). The doctrine of prudential or third-party standing, which arises out of judicial principle and caution, are harder to classify in practice because they are "closely related to the question whether a person in the litigant's position will have a right of action on the claim." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127, n.3 (2014) (quoting *Dep't of Lab. v. Triplett*, 494 U.S. 715, 721, n.2 (1990)). For example, the Second Circuit has ruled on breach of contract claims brought by non-parties to a contract both on constitutional, *see Cortlandt Street Recovery Corp.*, 790 F.3d at 418-20, and prudential standing grounds, *see Hillside Metro Assocs., LLC*, 747 F.3d at 48, as plaintiffs in those cases were third parties with no legally protected interests in the contract.

   **2. New York Champerty Law**

Claims in action, including rights to enforce certain contracts, may generally be freely transferred or assigned to others. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 103 (2d Cir. 2007); *accord Phoenix Light v. USB I*, 2020 WL 1285783, at *11. An assignment governed by New York law, however, must comply with New York's statutory

10

prohibition against champerty. *See* N.Y. Judiciary Law § 489. New York's champerty statute states:

> "[N]o corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon … ."

N.Y. Judiciary Law § 489(1); *Love Funding Corp.*, 918 N.E.2d at 893.

"Section 489(1) restricts individuals and companies from purchasing or taking an assignment of notes or other securities with the intent and for the purpose of bringing an action or proceeding thereon." *Justinian Cap. SPC v. WestLB AG*, 65 N.E.3d 1253, 1256 (N.Y. 2016) (internal quotation marks omitted). When a "lawsuit [is] not merely an incidental or secondary purpose of [an] assignment, but its very essence," the assignment is void. *Id.* at 168. An assignment of rights is not champertous, however, "if its purpose is to collect damages, by means of a lawsuit, for losses on a debt instrument in which [the plaintiff] holds a preexisting proprietary interest." *Love Funding Corp.*, 918 N.E.2d at 890.

Although an assignee's intent and purpose are usually a factual question, "where a plaintiff fails to rebut evidence that its purpose in seeking an assignment was to commence suit, a court may grant summary judgment in favor of a defendant." *Phoenix Light v. USB I*, 2020 WL 1285783, at *11 (citing *Justinian Cap. SPC*, 65 N.E.3d at 1259 and *Love Funding Corp.*, 918 N.E.2d at 895).

### 3. Plaintiffs' Reassignment and Standing

Plaintiffs do not have standing to bring their claims. C-BASS and Kleros transferred to BNY and DB respectively "all right, title and interest" in the Certificates, including the right to "file any claims or take any action or institute any proceedings." Phoenix Light transferred to

11

DB "all its present and future, actual and contingent claims and rights" in the Certificates it had acquired, and granted "all right, title, and interest in and to" the collateral assets. These transfers divested Plaintiffs of any right to commence lawsuits in relation to the RMBS Certificates. Consequently, Plaintiffs lack at least prudential standing to assert claims tied to the certificates. *See Phoenix Light v. USB II*, 2021 WL 4515256, at *1.

Plaintiffs maintain that they have standing because the litigation rights were reassigned back to Plaintiffs. This argument fails because the Reassignment was champertous under New York law and therefore void. New York law governs the Reassignment agreements. Under New York Judiciary Law § 489, assignments are void if a corporation "solicit[s], buy[s] or take[s] an assignment . . . of . . . any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon." N.Y. Judiciary Law § 489(1); *Justinian Cap. SPC*, 65 N.E.3d at 1257 (holding that a lawsuit was void because the assignment was champertous).

A reasonable jury could conclude only that Plaintiffs' reassignment was champertous, even construing the evidence in the light most favorable to Plaintiffs. Plaintiffs' Rule 30(b)(6) representative, Peter Collins, testified that "Plaintiff CDOs sought those CDO trustee assignments for the purpose of bringing this litigation." He further stated that the reassignment was needed, in part, because "they viewed the CDO trustees as suffering conflicts of interests." Based on this testimony, it is clear that Plaintiffs sought and obtained the Reassignment for the purpose of bringing this lawsuit. That the Reassignment had the effect of curing the CDO trustees' potential conflict of interest only confirms that the Plaintiffs sought the Reassignment "with the intent and for the purpose of bringing an action." *Justinian Cap. SPC*, 65 N.E.3d at 1256 (quoting N.Y. Judiciary Law § 489(1)).

Relying on *Love Funding*, Plaintiffs argue that the Reassignment was valid and not champertous because they had a "preexisting proprietary interest" in the RMBS certificates. *See Love Funding Corp.*, 918 N.E.2d at 890. Plaintiffs offer as examples their "reversionary interest" in the Certificates and their practice of paying noteholders and expenses with proceeds from the Certificates. This argument is unpersuasive. First, when Plaintiffs executed the CDO trusts, they assigned *all* "rights, title and interest" to their CDO indenture trustees. Such a grant of all "rights, title and interest" to an indenture trustee constitutes a "complete transfer" under Second Circuit law. *Phoenix Light v. USB II*, 2021 WL 4515256, at *2 (quoting *Nat'l Credit Union Admin. Bd.*, 898 F.3d at 253). Second, the "preexisting proprietary interest" exception under *Love Funding* does not apply because Plaintiffs retain no ownership interest in the RMBS certificates. *Id.* at *2.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED, and Plaintiffs' motion for summary judgment is denied. The Clerk of Court is respectfully directed to close the motion at Dkt. No. 393 and to close this case.

Dated:  April 27, 2022
       New York, NY

                                    LORNA G. SCHOFIELD
                                   UNITED STATES DISTRICT JUDGE